FRANK TROPENA, Appellant, v. KEOKUK NATIONAL BANK, Appellee.

**BANKS AND BANKING:** Deposits—Cancellation of Credit. A bank which, having issued foreign exchange, later receives it back (when its value is problematical), under an agreement to sell the same and collect the proceeds, does not thereby become the owner either of the returned exchange or of a check subsequently received as the result of the collection, and may cancel a credit which was entered on the mistaken assumption that the check was of face value.

Headnote 1:   7 C. J. pp. 597, 598, 616.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

APRIL 5, 1927.

Action at law. The facts are fully stated in the opinion. The cause was tried to the court without a jury, and the plaintiff appeals from an adverse judgment.—*Affirmed.*

*Bernard A. Dolan*, for appellant.

*Hollingsworth & Hollingsworth*, for appellee.

VERMILION, J.—It appears without dispute that, on May 14, 1921, the appellant purchased of the appellee bank for $400 the latter's draft on a bank located at Rome, Italy, for 6,861 lire, payable to himself. On June 6, 1923, appellant presented the draft to the drawer bank, and demanded payment thereof, which was refused. The appellant thereupon indorsed the draft, turned it over to the bank, and accepted the bank's receipt there-

for. The receipt stated that it was deposited "to be sent for sale and credit." The bank sent the draft to Knauth, Nachod & Kuhn, of New York, dealers in foreign exchange, with instructions to sell it and remit the proceeds. Knauth, Nachod & Kuhn sent to the bank their check for $316.98, as the proceeds of the sale of the draft. On receipt of this check, the appellee gave appellant credit on its books and on his pass book for the amount of the check, and the check was forwarded to the Hanover National Bank, of New York, for collection. Knauth, Nachod & Kuhn failed before the check was presented, and it was not paid. On being advised of the nonpayment of the check, appellee canceled the credit of $316.98 given appellant on its books and on his pass book. The action is by appellant to recover from the bank that amount, with interest from the date of such cancellation.

The answer pleaded that the draft was received from appellant for sale, and that the credit given appellant on the receipt of the check for the proceeds of the sale was, under a general custom of banks, a conditional credit only, conditioned upon its payment in the ordinary course of business, and that, when the check was not so paid, the credit was canceled, in accordance with such custom.

There is some conflict in the testimony as to what was said when appellant presented the draft for payment. The relation of the parties with respect to the draft at that time was fixed by the receipt given for it. Moreover, the judgment below in favor of the appellee is conclusive here upon any disputed question of fact, where there was evidence to sustain it. There was testimony tending to show that the bank refused to pay the draft because it had made a remittance to the bank at Rome to cover it, and because of the fluctuation in the rate of foreign exchange, a depreciation in the value of the lire, measured in dollars, and the bank's ignorance of its then value; that these facts were explained to appellant, who was informed that he would have to sell the draft; and that he then requested the bank to send the draft to New York for sale for him. It is clear that the relation of the parties at that time, and in respect to the draft, was that of principal and agent. The bank was appellant's agent to sell the draft.

Appellant contends that, as the bank was the drawer of the

draft, it was liable thereon, and that the transaction amounted to a payment of it when appellant was given credit for the amount of the check. The $316.98 represented the proceeds of the sale of the draft, the draft belonged to appellant, the bank took it for the specific purpose of selling it, and the proceeds of the sale belonged to appellant. The transaction had no aspect of payment of the draft by the bank. There is nothing in the Negotiable Instruments Law that impresses the transaction with the character of payment. Section 9521, Code of 1924, provides that the maker of a negotiable instrument "engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder." There is no evidence that the draft had been presented to the drawee, or dishonored, and appellee was under no present obligation to pay it. There is no basis for saying that, with respect to the draft, the transaction was other than the receipt given to, and accepted by, appellant showed it to be,—an agency on the part of the bank to sell the draft for appellant. It does not appear, except perhaps by inference, to whom the check received from Knauth, Nachod & Kuhn was payable. If it be assumed that it was payable to the bank, it nevertheless clearly belonged, not to the bank, but to the appellant.

Appellant relies strongly upon the fact that he was given credit as a depositor for the amount of the check. That fact is a circumstance to which different courts attach greater or less importance, in determining whether title to a check or draft passed to a bank taking it, or it was taken for collection only; but they all agree that such fact alone does not establish that the bank is the owner of the paper, as against the express agreement of the parties, or proof of circumstances from which an understanding to the contrary may be inferred.

We have adhered to the rule that, where a check or draft is deposited by a customer, and credit given by the bank on his account as cash, against which he has an immediate right to draw, in the absence of an understanding as to how it shall be treated, or proof of circumstances from which such an understanding may be inferred, *prima facie* the title to the paper passes to the bank. In *Acme H. & M. F. Co. v. Metropolitan*

*Nat. Bank,* 198 Iowa 1337, where we had occasion to consider the question and review the authorities, we so held. See, also, *Palo Alto County v. Ulrich,* 199 Iowa 1.

We have seen that, by the express agreement of the parties, the draft was not taken by the bank as purchaser, but to be sold for appellant, and that the proceeds of the sale, in the form of the check, belonged to appellant, and not to the bank. There was included in the authority to sell the draft the authority to receive or collect the proceeds of the sale. In the absence of instruction to the contrary, this authority might be executed in the manner usual and customary in the banking business, and appellant's assent thereto will be presumed.

"While the agent may not accept anything but the actual cash in satisfaction of the claim, he may receive a check or draft, negotiable and payable on demand, which he has good reason to believe will be honored on presentation, as a ready and more convenient means of obtaining the money in conditional satisfaction of the debt." *Griffin v. Erskine,* 131 Iowa 444.

See, also, *Bellevue Bank v. Security Nat. Bank,* 168 Iowa 707.

There is no claim that the bank exceeded its authority, or was guilty of negligence or breach of duty in accepting the check and forwarding it for collection.

It is clear that, at this point in the transaction, the bank, as agent for appellant, received a check belonging to appellant which it was its duty to collect. Nothing then occurred to change the relation of the parties, as fixed by their express agreement.

The fact that the bank gave appellant credit as a depositor for the amount of the check is a circumstance to be considered in determining the relation of the parties, and one that may, in the absence of proof of an understanding to the contrary, give rise to an inference that the bank became the owner of the check and the debtor of the appellant for its amount; but it is not alone conclusive upon the question, and does not establish that the relation of debtor and creditor existed, as against the express agreement of the parties to the contrary. Where it appears by the agreement of the parties, or by legitimate inference from the other circumstances shown in evidence, that the bank did not become the owner of the paper, a credit given

the depositor for the amount thereof is provisional, and may be canceled by the bank in the event that the check is not paid. This is in accordance with the general custom pleaded, and established by the evidence, and is well recognized by the authorities. See *Acme H. & M. F. Co. v. Metropolitan Nat. Bank,* supra, and authorities there cited.

The fact that the check was payable to the order of the bank, if it was, merely raises a presumption that it was the owner. *Acme H. & M. F. Co. v. Metropolitan Nat. Bank,* supra. Any such presumption would be overcome by the established facts.

There was a clearly established agreement that the draft was taken by the bank for sale. The effect of this was that the bank did not become the owner of the draft. Nothing whatever appears to show that there was thereafter any change in fact in the relation of the parties to the whole transaction or to the check representing the proceeds of the sale.

The judgment is—*Affirmed.*

Evans, C. J., and Stevens and Faville, JJ., concur.