SOUTHERN SURETY COMPANY et al., Appellants, v. WEST SIDE STATE SAVINGS BANK, Appellee.

MARCH 5, 1929.

*George H. Mayne, R. D. Neely,* and *Verne Benjamin,* for appellants.

*L. W. Powers,* for appellee.

KINDIG, J.—The primary question for determination in this case relates to whether the defendant-appellee was a depository, or merely an agency used by the trustee in bankruptcy for collection purposes. Whether the relationship between the appellee bank and the trustee in bankruptcy was that of debtor and creditor or principal and agent must be decided by the intention of the parties, as indicated by the facts and circumstances giving rise to the particular status. Before the contract between appellee and the trustee in bankruptcy arose, two banks were doing business in West Side. Both failed, and went into liquidation. One was a private bank, owned and operated by J. H. C. Peters. Bankruptcy proceedings were instituted against Peters and his financial concern. This resulted in an adjudication, on July 12, 1923, to the effect that Peters was a bankrupt; and accordingly, one J. M. Shea was appointed trustee, July 25th of the same year. He duly qualified and acted as such. On that day, this trust officer furnished a bond in the sum of $30,000, upon which the sureties were plaintiffs-appellants Wallace and Lillian Benjamin.

Thereafter, on December 16, 1924, the first bond was released, and a second substituted. Upon this substituted document, the plaintiff-appellant Southern Surety Company became the surety. Afterwards, on January 18, 1926, Shea resigned as trustee, and filed his final report, showing a defalcation and shortage in the amount of approximately $6,700. However, through a stipulation of settlement made between the new trustee, Jacob Johnson, and the sureties on the two bonds, $5,500 was received in full for the loss. That adjustment was authorized by the creditors, at a meeting duly called. Allocation of the loss was made between the sureties, in that one half was paid by the appellant Southern Surety Company, and the other half by the appellants Wallace and Lillian Benjamin.

It is to recover this sum of $5,500 that the appellants brought the present suit at law. They predicate their right so to do upon the fact that the appellee, West Side State Savings Bank, illegally became a depository, without designation by the Federal court, and then wrongfully permitted the trustee, Shea, to withdraw deposits without having the orders therefor countersigned by the referee in bankruptcy. By way of answer, appellee denied that it ever became a depository, but, on the other

hand, alleged that its relationship with the trustee, Shea, was that only of agent for collection purposes.

Many other questions are argued, but it seems unnecessary to consider any except this one.

A status of depositor and depository arises out of a contract. So, in the same way, the relationship of principal and agent is brought forth. Proof will determine this dispute, as it does all other controverted issues of facts. If the appellee was merely the agent of the defaulting trustee, then the status of debtor and creditor did not exist. *Brown v. Sheldon State Bank,* 139 Iowa 83; *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608; *Leach v. Battle Creek Sav. Bank,* 202 Iowa 875; *Andrew v. State Bank of Dexter,* 204 Iowa 565. Receipts of money by appellee in that capacity would be for the purpose of performing the duties growing out of the collection agency, and not to function as a depository. (See authorities above cited.) Upon that doctrine, the trial was had. In other words, it was the theory of the trial: First, that, if appellee was a mere collection agency, it was not a depository, and did not convert the proceeds of the bankrupt's estate, when making the collection; and second, that, assuming appellee was not a depository, it was not bound by the bankruptcy laws and rules of court in reference to paying out the proceeds of the collection only upon checks countersigned by the referee. Under those principles, the following facts are controlling.

During the time under consideration, the First National Bank of Council Bluffs was a depository, legally designated as such by the Federal court. Such institution was approximately 100 miles from West Side. Nevertheless, it was the nearest depository thereto. J. M. Shea, the defaulting trustee, did not testify in this cause. Therefore we do not have the benefit of his evidence concerning the contract covering the operations between him and the appellee. But appellee's cashier did relate, upon the witness stand, the nature of the transactions between his bank and the former trustee, Shea. These undertakings on the part of the appellee were for the purpose of making collections for the trustee, Shea, and as such, they commenced in July, 1923, and continued to February 11, 1926. Clearly this is revealed by the record. Concerning the business between the appellee and the trustee, Shea, the cashier above mentioned said:

"He [the defaulting trustee, Shea,] was down there at West Side, collecting the assets of this bankrupt estate, and in the course of his work, he [the trustee, Shea,] would get checks drawn on other banks around the country, and bring them to us [appellee], and want the money. We [the appellee] would insist on waiting until the checks cleared, and in the meantime, giving no credit on his [the trustee, Shea's,] account; and when the checks cleared, we [the appellee] would then stand ready to pay him [the trustee, Shea,] the money. If we [the appellee] didn't extend that facility, in order to clear his [the trustee, Shea's,] checks, he would have to send them to Council Bluffs and get his cash and everything.

"Q. I take it you did know, of course, that, from these drafts that were being sent to Council Bluffs, that the depository was down at Council Bluffs, where he [the trustee, Shea,] was keeping his money? A. Yes, sir. Well, I thought that's where the money belonged, and he [the trustee, Shea,] just used this [the appellee bank] as a clearing house, is all. * * * I meant by that [clearing house] that we [appellee] didn't make a habit of paying any money for foreign checks unless we [the appellee] have the money for them; and so, when he [the trustee, Shea,] brought checks to deposit, we [appellee] would clear the checks, and not give him credit for the amount until we [appellee] had them cleared; and then he [the trustee, Shea,] would draw a draft for that amount, and send it to Council Bluffs."

There was no intention, either express or implied, that the appellee bank would, in any event, be a depository for the bankrupt estate. In fact, the contrary appears. Sometimes the appellee collected claims of the bankrupt estate's from various debtors. Likewise, the proceeds of these collections, as well as those received from collecting foreign checks, were paid to the trustee in cash, or in accordance with his order or direction. Those dispositions of this money were made by appellee as an agent to its principal, rather than as a depository to its depositor. To put the thought in another way, the collection in each instance was for the purpose of remittance, rather than for credit. See *Leach v. Iowa State Sav. Bank*, 202 Iowa 894. *Andrew v. State Bank of Dexter*, supra, when speaking of a collection made by the bank as agent for a principal, said:

"Receipt of said check and the proceeds it represents, did not constitute the agent the debtor of its principal * * *, but rather, said funds remained in said agent's possession as the property of and in trust for the principal."

Were the present controversy over a single collection item, the result would be clear. Yet the principle involved is just the same in the case at bar, although many, rather than an individual, transaction took place. An agent may collect several obligations for his principal, as well as only one. Throughout the months the multitude of actions were taking place, the appellee remained the agent of its principal, because such it was in reality. Very soon after collections were made, the receipts, at the trustee Shea's request, were forwarded to the First National Bank, which was a depository at Council Bluffs. The method used for such transfer was sometimes by draft, and then, at other times, by check. Again, on different occasions, appellee would deliver directly to the trustee, Shea, the cash obtained through these collections. At other times, appellee would follow the trustee's orders, and deliver the cash to whom directed. Summarizing these transactions, it appears that appellee, at the request of the trustee, Shea, actually sent to the bankruptcy depository bank at Council Bluffs $25,500. Of the remaining collections, the appellee paid the trustee, Shea, in cash $6,441.52, leaving a balance of about $9,266.55. Approximately $5,500 of this balance was sent to the State Savings Bank of Council Bluffs, hereinafter explained, and the remainder was delivered at the trustee's orders, with the exception of $432.05 thereof, which was disposed of by the referee in bankruptcy.

All the time, however, the manifest intention of the parties was that the relationship of principal and agent existed, as distinguished from that of depositor and depository. Each case must depend upon its own facts and circumstances, and all of the evidence here is in favor of the appellee's contention. Accounts were necessarily kept by appellee. Duty demanded that. Resultantly, the method of bookkeeping utilized could not change the true relationship of principal and agent, if, in fact, such existed. Wherefore, the fact that a bank book was employed and balances were rendered, does not change the real situation. See *Andrew v. State Bank of Dexter*, supra. Apparently that was the most convenient and satisfactory method of

accounting, for both principal and agent. Small balances in the collection account do not alter the conditions under which the collections were made and remitted. What took place, in such event, was that the trustee, Shea, did not desire all the money, at the particular moment, sent to the depository at Council Bluffs, but wanted a small portion thereof delivered to himself in cash, for the purpose of performing his trust. When sending some of this trust money to Council Bluffs, it appears that the trustee, Shea, drew checks in an amount aggregating nearly $5,500 in favor of the State Savings Bank of Council Bluffs, aforesaid, which was not a depository in bankruptcy. Upon the arrival of these last-named funds at the Council Bluffs institution, they were deposited to the personal account of Shea, and never went to the depository, First National Bank, or the bankrupt estate. Therein is where the trustee defaulted.

This transfer, however, from appellee to the State Savings Bank of Council Bluffs was in strict accordance with the agreement of agency. Appellee had no knowledge that the trustee, Shea, intended any fraud or wrongdoing thereby. No evidence appears that there was any conspiracy between appellee and Shea to embezzle. Every cent received by appellee was paid out as the trustee, Shea, directed, except $435.05, as before named, which, as previously explained, was delivered to the referee in bankruptcy. Necessarily, then, the appellee was not a depository, but an agent for collection, and did not receive the items named in violation of the Federal statute or the orders of court relating to bankruptcy. Moreover, the loss for which recovery is sought occurred, not before, but after, the collecting agent had delivered the money collected to its principal. Without a dispute in the facts, it was the district court's duty to draw a legal conclusion therefrom.

Because of the view we have taken on the subject discussed, we do not suggest or decide whether or not, under the facts here involved, appellee would have been liable, had it been a depository.

Therefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.