DAVIDOW v. BANK OF DETROIT.

1. BANKS AND BANKING—BILLS AND NOTES—NOTICE IN PASS BOOK
   —CONTRACTS.
   Notice printed in bank pass book stating that checks, drafts,
   notes, etc., when deposited are received for collection only,
   constitutes contract between depositor and bank which is not
   affected by fact that, for convenience, bank carried note so
   deposited in its discount ledger.

2. SAME—ALLOWING DEPOSITOR TO CHECK AGAINST NOTE DEPOSITED
   FOR COLLECTION.
   Mere fact that depositors were allowed to check against credit
   resulting from note deposited with bank for collection does
   not change import of transaction, but note remains property
   of depositors, and where it was dishonored their account was
   properly charged with amount thereof.

3. SAME—NOTICE—CONSTRUCTIVE NOTICE.
   Depositors who had been using bank pass book for upwards of
   four years are bound by notice printed therein, notwithstand-
   ing their testimony that their attention had not been called
   thereto previous to transaction involved; they being charge-
   able at least with constructive notice.

4. SAME—AGREEMENTS BETWEEN DEPOSITOR AND BANK.
   Bank deposit may be subject to any agreement which depositor
   and bank may make with respect thereto, so long as rights
   of third parties are not injuriously affected thereby.

5. SAME—DEPOSITOR BOUND TO USE ORDINARY CARE IN LEARNING OF
   PROVISIONS IN PASS BOOK.
   Depositor is bound to use ordinary care and diligence in becom-
   ing informed of contents of reasonable provisions plainly
   printed in pass book which constitute part of the contractual
   relation between himself and the bank.

Error to Wayne; Miller (Guy A.), J. Submitted
April 15, 1931. (Docket No. 113, Calendar No.
35,425.) Decided June 1, 1931.

Title to commercial paper deposited in bank for collection, see
annotation in 11 A. L. R. 1046; 42 A. L. R. 492; 68 A. L. R. 727.

Assumpsit by Larry S. Davidow and others, doing business as Davidow & Davidow, against Bank of Detroit, a Michigan corporation, on a bank account. Judgment for plaintiff. Defendant brings error. Reversed, and judgment ordered entered for defendant.

*Davidow & Davidow,* for plaintiffs.

*Anderson, Wilcox, Lacy & Lawson (C. J. Huddleston,* of counsel), for defendant.

NORTH, J. The defendant reviews by writ of error a judgment entered against it for $959.44. The pertinent facts appear from the following portion of the circuit judge's findings:

"On January 30, 1926, J. and A. Schweizer executed to Davidow & Davidow their promissory note in the amount of $900 in payment of legal services. This note was indorsed by Davidow & Davidow and came into the possession of the Bank of Detroit. April 1, 1926, it was paid by the receipt of $50 in cash on principal and the accrued interest and by the giving of a new note for $858. June 2d, this renewal note was paid by the payment in cash of $50 on principal and of the accrued interest and the giving of a further renewal note in the sum of $800, signed by J. T. Schweizer and Anna Schweizer and indorsed by plaintiffs. This note was not paid at its maturity on August 2d.

"Davidow & Davidow is a partnership engaged in the practice of law in the city of Detroit. The partnership maintained a commercial account on the Bank of Detroit covered by pass book, Exhibit 7, from August 16, 1922, to August 28, 1926. * * *

"On the 2d of August notice of dishonor was executed and mailed to J. T. Schweizer and Anna Schweizer. * * * Notice that the note had been dishonored was not received by the plaintiffs in this case until the 9th day of August, 1926, at which time

they received notice that the amount of the note together with interest and charges, in all $809.69, had been charged back by the bank to their commercial or checking account.

"The Bank of Detroit carried upon its books two accounts with Davidow & Davidow. One account is the ledger account carried in connection with their commercial or checking account. * * * The bank also opened an account with Davidow & Davidow in connection with the note transactions above described. This account is in evidence as Exhibit 9. It is on a sheet under the heading of liability ledger, 'Indirect as indorser and guarantor.' It contains a statement of each transaction and named J. and A. Schweizer as makers of the note in question and Steve Davidow as accommodation indorser or guarantor.

"On the first page of the deposit book, Exhibit 7, there is a printed notice containing the following language in so far as it is material in this case:

" 'This bank in receiving checks, drafts and notes or other items *on deposit or for collection* acts as your agent only, and assumes no responsibility beyond the exercise of due care in selecting agents at other points and forwarding such items to them.

" 'Should any such check, draft or other item be dishonored or should there be any delinquency on the part of the collecting agent, the amount will be charged back to the depositor's account and the check, draft, note or other item delivered to the depositor.'

"There is no evidence in the case other than the fact that this deposit book had been in use for a period of upwards of four years that the plaintiffs or any of them knew of the existence of this rule."

We also quote the following portion of the trial judge's findings of law:

"The notice printed in the pass book, Exhibit 7, under the testimony in the case, constitutes a con-

tract between the depositors and the bank which contract is binding in connection with the commercial account in accordance with its terms.

"This contract does not cover the transaction in question for the following reasons:

"(1) The transaction between the plaintiffs and the defendant bank in connection with the note, Exhibit 1, was neither a receipt thereof for deposit or for collection.

"(2) Such transaction was a discount by plaintiffs with the bank of said note. The deposit as shown in the pass book, Exhibit 7, was a deposit of the proceeds of such discount and not a deposit of the face of said note. * * *

"The note was discounted and a separate account was started as the result of that discount. What was deposited in the checking account was the proceeds of that discount. If the plaintiffs in this case had chosen to take the cash instead of a credit resulting from the discount certainly the bank could not maintain that any relationship existed except the relationship of indorsers and indorsee. The bank could not then recover unless the provisions of the negotiable instruments law were carried out (2 Comp. Laws 1929, § 9338). It is not quite clear how the accidental fact that the proceeds instead of being received in cash were transferred in the shape of credit to their checking account can make any difference in the relationship created by the signing of their names on the back of the paper, Exhibit 1, and their transfer of that paper to the bank."

The issues hereinafter considered are raised by exceptions to the trial judge's findings of fact and law and assignments of error thereon. From the above-quoted portion of the record it is obvious that the trial judge in part based his determination of defendant's liability upon the fact that defendant carried a record of the Schweizer notes in its dis-

count ledger. In this connection the undisputed testimony shows that this was merely a matter of bookkeeping for the convenience of the bank.

"*Q.* Then a distinction is made by the bank between the checking accounts and the indirect indorser and guarantor?

"*A.* As far as bookkeeping is concerned, yes."

As between the parties concerned in the original transaction, we think a mere form of bookkeeping is not of sufficient consequence to alter a definite contractual relation between the parties, if such is found to exist. The trial judge correctly determined that the printed notice in the pass book constituted a contract between the plaintiffs and the bank which was binding in connection with the plaintiffs' commercial account. We are mindful that one of the three members of plaintiffs' firm testified:

"That this language (of the notice printed in the pass book) was not called to our attention at any time, and the first intimation we had of it was when it was raised by the pleadings in the case."

At least one of the other two members of this firm was in court at the trial of this case; but neither of them testified as to their knowledge or lack of knowledge of the pass book notice. But obviously determination of defendant's liability is not controlled by this phase of the case if, as plaintiffs claim, the note in question was discounted by the bank rather than being received as a conditional item of credit in plaintiffs' account. As noted above, the trial judge held as a matter of law that this note was discounted; but in this conclusion we are constrained to hold there was error. When the two preceding Schweizer notes fell due plaintiffs went

with the makers to the bank without notice or demand, so far as the record shows, and arranged with the bank upon payment of $50 on principal to again carry the item in plaintiffs' account another two months. In view of plaintiffs' method of handling the previous Schweizer notes at maturity the defendant bank was fully justified in assuming that the note in question was only a tentative or conditional credit item carried for plaintiffs' benefit in their commercial account, rather than a discount of the note. Perhaps in a strictly technical sense it cannot be said that the bank held this and the two preceding notes for collection; but the transaction as viewed by the parties concerned obviously contemplated ultimate collection for the benefit of plaintiffs. If such were not the case it would seem that in both the first and second renewal notes the bank would have been named as payee instead of plaintiffs. The trial court expressly found that "the renewal notes of April 1st and June 2d were taken by the defendant bank at the request of the payees." As noted, the amount of each of these renewals was credited to plaintiffs' account; and obviously at the same time their account must have been debited with the amount of the matured note which was then surrendered. The renewal notes, as well as the original note, were payable at plaintiffs' office, not at the bank. We think that each of these notes by reason of the obvious understanding between the plaintiffs and the bank remained the property of the former; and as stated in *People's State Bank* v. *Miller,* 185 Mich. 565, hereinafter quoted, the mere fact that plaintiffs were allowed to check against the credit resulting from these notes to their account does not change the import of the transaction.

"It seems to be a general rule that when checks or other commercial paper are deposited in a bank indorsed 'for collection,' *or where there is a definite understanding* that such is the purpose of the parties at the time of the deposit, the title to the paper remains in the depositor. See note to *Fayette National Bank* v. *Summers,* 105 Va. 689 (54 S. E. 862, 7 L. R. A. [N. S.] 694) ; 5 Cyc. p. 493. *And the mere fact that the depositor is allowed to check against the credit does not change the import of the transaction,* so as to preclude the bank from charging back the amount of credit if the check deposited is not paid. The bank may, as a matter of favor and convenience, permit checks to be drawn against it before payment; the depositor, in the event of nonpayment, being responsible for the sums drawn, not by reason of his indorsement, the check not having ceased to be his property, but for money paid. 3 R. C. L. (under title 'Banks') p. 522." *People's State Bank* v. *Miller, supra.*

"But, after all, the question is one of the agreement of the parties, *either express or implied,* from the general course of business between them. There can be no doubt that if a draft or other paper is delivered to a bank for collection, the mere fact that the indorsement of the owner is unrestricted, will not, as between him and the bank, make the latter the owner of the property.

"Neither is it conclusive upon the question of ownership of the paper that before collection the amount of it is credited to the customer's account, against which he has the privilege of drawing by check. It has been frequently held, with the approval of the best text writers, that if paper is delivered by a customer to a bank for collection, or 'for collection and credit,' a credit of the amount to the customer before and in anticipation of collection will be deemed merely provisional, and the privilege of drawing against it merely gratuitous, and that the bank may cancel the credit, or charge

back the paper to the customer's account, if it is not paid by the maker or drawee. *Giles* v. *Perkins,* 9 East's T. R. 12 (103 Eng. Rep. Repr. 477); *Levi* v. *National Bank of Missouri,* 5 Dill. 104 (Fed. Cas. No. 8,289); *Balbach* v. *Frelinghuysen* (C. C.), 15 Fed. 675. The right of banks to do this in case of the deposit of checks on other banks, without any special contract, is generally exercised and recognized." *In re State Bank,* 56 Minn. 119 (57 N. W. 336, 45 Am. St. Rep. 454).

While the context above quoted refers primarily to checks and drafts which presumably are due forthwith, we think with equal reason and justice the same rule should be applied to short-time paper when such is clearly shown to be the understanding between the parties themselves. And in the instant case "notes" were expressly included in the printed notice in plaintiffs' pass book wherein the bank reserved the right to charge them back in case of nonpayment. Notwithstanding the testimony in the record that such notice was not called to plaintiffs' attention at or prior to the time of this transaction, we think they are still bound thereby under the circumstances of this case. This provision in the pass book covers both "items *on deposit or for collection.*" We think it is a strained and untenable conclusion to hold that the Schweizer notes were not "items on deposit" in plaintiffs' account. Clearly and conclusively they were, and no other conclusion is justified by this record.

The circuit judge correctly found that the notice in the pass book under the testimony in this case constitutes a contract between depositors and the bank. Contracts between a bank and its depositors should be required to be performed and must be construed in the same way as contracts between

other parties. 3 R. C. L. p. 450. A bank deposit may be subject to any agreement which a depositor and the bank may make with respect to it so long as the rights of third parties are not injuriously affected thereby. 7 C. J. p. 642. If plaintiffs had possessed actual knowledge of the printed notice in their deposit book, without question they would be bound thereby. We think under the circumstances of this case plaintiffs cannot be heard to say they did not have knowledge of this phase of their contractual relation with the defendant bank. They had been banking with the defendant bank for upwards of ten years. Their pass book in which this item was entered had been used by them for upwards of four years and contained a record of approximately 250 deposits. They are chargeable at least with constructive notice, on the same theory and for the same reason that a depositor who receives his return checks and his pass book is bound by the entries therein in the event he fails within a reasonable time to examine it, if to hold otherwise works a prejudice to the bank. *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96 (6 Sup. Ct. 657). See, also, note and numerous citations in 7 C. J. p. 638. We have recently held a depositor owes his bank the duty to use ordinary care in examining the returned checks and statements. *Detroit Piston Ring Co.* v. *Wayne County, etc., Bank,* 252 Mich. 163, 179. It is equally true that a depositor is bound to use ordinary care and diligence in becoming informed of the contents of reasonable provisions plainly printed in his pass book which constitute a part of the contractual relation between himself and the bank.

For the reasons indicated the judgment entered in the circuit court must be set aside. The case is

remanded to the circuit court, with direction to enter judgment for defendant. Appellant will have costs of this court.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.