L. A. ANDREW, State Superintendent of Banking, Appellant,
v. SECURITY TRUST & SAVINGS BANK OF FORT DODGE,
Appellant, et al., Appellees.

No. 41208.

JUNE 24, 1932.

John Fletcher, Attorney-general, and Helsell, McCall &
Dolliver, for appellants.

Thomas & Loth, for appellees.

MORLING, J.—Interveners were customers of the Security
Trust and Savings Bank both as borrowers and depositors. They
had a pass book labeled "Security Trust & Savings Bank, Fort
Dodge, Iowa, in account with Natalini and Felciai." In it were

several pages of entries by date and amount. The last entry is the one in controversy and is as follows: "May 19 '30 $3126.15." This entry was the total of 72 different sums (checks) listed on an adding machine slip attached to the deposit slip. Printed in the pass book was the following "notice":

"In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for the defaults or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents, may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; and it may charge back any item before final payment, whether returned or not; also any item drawn on this Bank not good at close of business on day deposited."

Interveners contend here that because of this "notice" the bank took the 72 checks only as interveners' agent for collection, not on deposit, and that the bank acquired no title to them. For convenience of expression we shall speak of the transaction as a "deposit" and the Security Trust & Savings Bank as "the Bank."

On May 17, 1930, interveners were owing the bank an overdraft of $550.70. One member of the intervener partnership was also indebted to the bank on his promissory note for $1,000, which had been pledged to the Continental Company as security for an indebtedness of the Security Trust & Savings Bank. The deposit in question was made Saturday evening, May 17, 1930. Interveners and the Bank Official each made out a deposit slip in the following form:

"Security Savings Bank
Deposited by
Natalini & Felciai. Ft. Dodge Ia 5-19-31
Please list each check separately
Currency...................................................
Silver......................................................

Gold................................................,
          Checks
Slp                          3126.15''

Attached was the adding machine slip previously mentioned. Checks representing $123.35 of this amount were drawn on the Security Trust & Savings Bank. The others were drawn on other banks. The intervener making the deposit testifies that the slip ''is dated May 19th,'' but the fact is it was Saturday, May 17th, about 7:15 P.M. The banker made out the deposit slip.

''There was a list of the checks made out on the adding machine which totaled $3,126.15. All of the deposit consisted of checks. * * * The checks were first endorsed by me and my firm and I turned them over to Jim Jensen in the bank. I made out one deposit slip myself which the bank got. I had a list— Jensen made out the deposit slip. * * * which was put in the drawer and he wrote the deposit in my book.''

The Bank did not open after Saturday, May 17. Intervener making the deposit further testifies:

''After the bank closed I went to the first man that was there and asked about the checks. He said the checks was closed and was in clearance Monday morning.''

A representative of the Banking Department took charge of the bank and cleared the checks. There is no evidence that the endorsement of the checks was in any way limited. On June 16, 1930, interveners filed ''Claim and Petition of Intervention,'' alleging that the receiver had classified their claim as a deposit of $2,575.45; ''that in truth and in fact these interveners are entitled to a preference against the funds and assets in the hands of the receiver for said sum * * * because * * * these interveners entrusted the Security Trust & Savings Bank with 72 checks drawn on other banks, which checks were left in the possession of the Security Trust & Savings Bank under the following written agreement * * * [setting out the ''Notice'' previously referred to]. That said Security Trust & Savings Bank, having obtained possession of said checks under said agreement, suspended its business and closed its doors before having performed any of the terms or conditions of said agree-

ment and without having collected any of said checks, * * * and that the proceeds and avails of the said checks have gone into the hands of the receiver. * * * that at the time said checks were entrusted to said bank, these interveners were owing said bank a sum slightly in excess of $600 on open account, and that the receiver * * * has deducted such amount from the aggregate sum of said checks and has classified the claim of these interveners with respect to the remainder of said checks as an ordinary deposit claim. Wherefore, these interveners pray that the court adjudge them to be entitled to a preferred claim for the sum of $2,575.45 * * *"

On September 4, 1930, interveners filed objections to receiver's report on the ground that it "fails to allow them a claim for preference in the sum of $2,575.45 as prayed in their petition of intervention filed June 16, 1930 * * *" In another division interveners claimed that they were entitled to offset the $1,000 note against the amount to which the bank was indebted to them or held trust funds for them. It was stipulated that the court should first decide whether the note might be offset, and "if such right of offset exists, the court shall order the same; and in such event the claim of the interveners for preference is to be reduced by the sum of $1,000. * * * And the claim for preference shall stand and be determined by the court only for the balance * * *" The court allowed the offset and granted interveners a preference for the balance, $1,575.45.

For the moment we lay the "notice" out of consideration. Deposit slips are receipts and constitute an admission of the existence of the relationship of debtor and creditor for the amount thereby acknowledged to have been received by the bank. In re Ruskay, 5 Fed. (2d) 143, 147; First National Bank v. Clark, 134 N. Y. 368, 32 N. E. 38, 17 L. R. A. 580.

Interveners by making out the slip indicated their purpose of making a deposit. Blacher v. National Bank, (Md.) 135 Atl. 383, 387.

The evidence is that interveners endorsed the checks "and turned them over to" the bank: The bank gave interveners credit on their overdrawn account for the amount of the checks and (leaving the first sentence of the "notice" out of view) became the owner of them. As to the checks the relationship between the bank and interveners was that of endorser and

endorsee, and as to the balance of the credit interveners had the right to check against it and the relationship was that of debtor and creditor. Acme H. & M. F. Co. v. Metropolitan Nat. Bank, 198 Iowa 1337; Andrew v. Marshalltown State Bank, 204 Iowa 1190, 1193; Burton v. United States, 196 U. S. 283; 7 C. J. 599.

Such was the relationship although the bank by express or implied agreement reserved the right to charge back the checks if dishonored. Interveners had the credit. The bank had the title to the checks, although both the interveners' credit and the bank's title were conditional. Bellevue Bank v. Bank, 168 Iowa 707, 715; City of Douglas v. Federal Reserve Bank, 271 U. S. 489; In re Receivership Washington Bank, (Minn.) 75 N. W. 228, 229; Blacher v. Nat. Bank, (Md.) 135 Atl. 383, 386; Commercial Bank & Tr. Co. v. Minshull, (Wash.) 242 Pac. 29, 30; Cottondale Planting Co. v. Bank, (Mo. App.) 286 S. W. 425, 427; Bryant v. Williams, 16 Fed. (2d) .159, 162; Clancy v. First State Bank, (N. D.) 215 N. W. 779, 780; Scott v. W. H. McIntyre Co., 144 Pac. 1002, 1004; Walker & Brock v. D. W. Ranlett Co.; (Vt.) 93 Atl. 1054, 1056; Davidow v. Bank of Detroit, (Mich.) 236 N. W. 828; Tropena v. Keokuk Nat. Bank, 203 Iowa 701, 703.

The agreement for charging back in case of dishonor amounted only to a summary remedy for enforcing the endorsement. It did not operate to withhold from the bank the ownership of the paper. Id.

Was a different relationship created by the "notice"? Interveners' contention is that because of the terms of the "notice" the bank took merely the possession of the notes as interveners' agent for collection, and obtained no title. This contention is necessarily based upon the first sentence, namely: "In receiving items for deposit or collection this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care."

The question thus presented is one of great importance, not only in respect to claims for preference such as that before us, but with respect to relationships and conditions that can not be foreseen. The checks were endorsed and delivered to the bank concededly on the understanding that the bank through its officers and employees would transmit them to other banks. If

the relationship of principal and agent between the claimants and the bank was created, the bank incidentally to such relationship was entrusted with the possession of the property, and consequently was a bailee. 6 C. J. 1099. The officers and employees of the bank and other banks to whom the paper might be transmitted obtained no title for themselves or their principals or correspondents. They might easily in the process of collecting and accounting in which the business is usually conducted and which was contemplated by the depositor at the time lay themselves open to a charge of larceny or embezzlement. See Dotson v. State, (Ark.) 10 S. W. 18; State v. Fraley, (W. Va.) 76 S. E. 134. In civil matters the question may be of great importance in controversies which may arise between the depositor or his creditors and the bank in cases of overdraft or of other indebtedness of the depositor to the bank; in controversies between drawers of checks and depository banks or their correspondents; in cases where drawers, endorsers or makers of deposited paper seek rescission against depositors; in controversies between the depositor's creditors and the bank and its endorsees; and in similar controversies in various relationships between the parties concerned, controversies in which the material question would be whether the holder of checks after depositing them retained title or acquired the rights of a depositor.

The meaning and effect of a contract, and the rights of the parties to it, are to be determined from their intention as evidenced by what they say and do and all that they say or do at the time and by their course of business (barring, of course, rules of evidence such as the parol evidence rule and statute of frauds, none of which is involved here.) The name or designation which the parties see fit to give to the transaction or to their relationship is not conclusive.

"In determining the real character of a contract, courts will always look to its purpose, rather than to the name given to it by the parties." Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 672.

See, also, Burlington Savings Bank v. Prudential Ins. Co., 206 Iowa 475; Murch v. Wright, (Ill.) 95 Am. Dec. 455.

The fact, for instance, that the parties denominate their transaction a lease and themselves lessor and lessee respective-

ly does not of itself make the transaction a contract of lease if it be in law a contract of sale. The court will not permit itself to be deceived by a mere subterfuge. Id. Singer Sewing Machine Co. v. Holcomb, 40 Iowa 33; 6 C. J. 1088. This doctrine, of course, applies to a case where attempt is made to create a fictitious agency.

In determining whether a deposit is general or for collection the court will look to the real intention and purpose of the parties as revealed by the agreement and the circumstances by what they did and said at the time, and by their course of business. Id. Palo Alto County v. Ulrich, 199 Iowa 1; Dubuque Fruit Co. v. Emerson & Co., 201 Iowa 129; Tropena v. Keokuk Nat. Bk., 203 Iowa 701; Andrew v. Marshalltown State Bank, 204 Iowa 1190; Southern Surety Co. v. West Side Bank, 207 Iowa 910.

We have not, as do some states, a statute determining the relationship or rights of the parties in cases such as this. The matter here must be determined by common-law principles.

Interveners do not claim to impress a trust upon the fund deposited because of fraud in receiving it when the officers knew that the bank was insolvent. See Andrew v. Marshalltown State Bank, 204 Iowa 1190.

The determination of the question presented depends upon the intention of the bank and depositor as disclosed by all the facts and circumstances of the transaction, including custom and course of business mutually known and recognized.

It is a matter of common knowledge that banks frequently were involved in controversies over such endorsements on account of negligence of correspondents in making collections and on account of refusal for various reasons by depositors to recognize the right of charging back unpaid paper. It was because of these difficulties that the practice of adopting a "notice" similar to that before us grew up.

We recur now to the sentence relied upon in support of the claim for preference, viz., "in receiving items for deposit or collection this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care." This sentence does not comprise all of the "notice" nor all of the elements or items of the transaction. One part of this sentence purports to stipulate the bank's relationship as that of "collect-

ing agent,'' but that very sentence denominated the receipts of items alternatively as ''for deposit or collection'' and denominates the interveners depositors. The court will not isolate particular expressions intended to deceive and make them controlling. Burlington Savings Bank v. Prudential Ins. Co., 206 Iowa 475; Owensboro v. Dark Tobacco Growers' Ass'n, (Ky.) 300 S. W. 350; W. J. Barton Seed, F. & Imp. Co. v. Mercantile Nat. Bank, (Tenn.) 160 S. W. 848; Standard Fashion Co. v. Magrane Houston Co., 259 Fed. 793, 794; Wheatman v. R. Hoe & Co., (Wash.) 290 Pac. 853.

As we have seen, laying aside the ''notice,'' the acts of the parties at the time created the relationships of debtor and creditor and of endorser and endorsee. The sentence upon which interveners base their contention is followed by the statement ''the items *are credited subject* to final payment.'' There is the further statement that ''the bank *may charge back any item* * * * Also *any item drawn on this bank* not good at close of business on day deposited.'' There are specific provisions designed to relieve the bank from faults which otherwise might disable it from enforcing endorsements.

It is not disputed that if the deposit had been of cash the bank would have taken title to the cash and interveners would have been its creditors for the amount. Literally, however, the sentence in question would, on interveners' contention, apply to cash, for it reads: ''In receiving items for deposit or collection this bank acts only as depositor's collecting agent.'' The language is in the alternative: ''In receiving for deposit * * * this bank acts only as depositor's collecting agent.'' It is evident that the words ''deposit or collection'' could not have been intended distributively to create the technical relationship of principal and agent. The notice in express terms recognizes that the items are credited and that drafts or credits resulting from them are ''conditional payment.'' The notice recognizes that the bank obtains title to the items deposited and that it has given credit to the depositor for them. The meaning and purpose of the notice therefore are found in the provision that the bank ''may charge back any item before final payment whether returned or not.'' That is, though the bank has given the depositor credit the credit is not final but may be liquidated by charging back dishonored or worthless items.

Interveners were at the time of the deposit indebted to the bank on the very account to which the items were credited. They might have been indebted for an amount equal to or greater than the deposit. By the deposit and credit interveners provisionally paid the overdraft. Both parties could only have understood that the overdraft was paid and that interveners had a checking balance, (fraud not being claimed) subject to possible diminution by charging back. Suppose interveners had demanded of the bank return of all the checks, would they have been entitled to them? Suppose they had demanded back part of the checks. It was not known which or all of them might be dishonored. Of which ones could interveners legally and effectively have demanded a return?

Interveners concede the right of the bank to apply the deposit as far as necessary on the overdraft. To that extent necessarily they concede that the transaction was one of deposit and in effect of cash. See Perth Amboy Gas Light Co. v. Middlesex County Bank, 60 N. J. Eq. 84; 45 Atl. 704; Scott v. W. H. McIntyre Co., (Kans.) 144 Pac. 1002, 1004; Walker & Brock v. D. W. Ranlett Co., (Vt.) 93 Atl. 1054, 1057.

To paraphrase the language of the court in the last cited cases: "It is apparent that the * * * [parties] did not use the phrase 'for collection' in its strict technical sense."

In their claim as filed, and in their objections to the receiver's report, interveners do not assert title to the checks. They say merely that the bank having obtained possession of them under the agreement suspended its business "before having performed any of the terms or conditions of said agreement and without having collected any of said checks." When they went to the bank after it closed they did not demand a return of the checks. They merely "went to the first man that was there and asked about the checks." They did not claim to rescind the agreement or deny the interest of the bank in the checks. They could not, and did not, undertake to revoke the agreement without payment at least of the overdraft. Citizens' St. Bank v. E. A. Tessman & Co., (Minn.) 140 N. W. 178. The evidence is "that the checks were all cleared." All conditions referred to in the claim, and on which the claim was based, have in fact been performed, though by the receiver instead of by the bank, and without protest, revocation or rescission by interveners.

The bank might take title provisionally or on condition subsequent. It might take title with option to return.

The case is analogous to one of sale or return, where we have held that the title passes with the right to the purchaser to rescind and return. Wind v. Iler & Co., 93 Iowa 316; Wesco Supply Co. v. Allterton, 156 Iowa 695; 55 C. J. 585.

Interveners rely principally on In re Assignment of State Bank, (Minn.) 57 N. W. 336, and In re Bank of Minnesota, (Minn.) 77 N. W. 796, which recognize the principle, "* * * the question is one of the agreement of the parties, either express or implied, from the general course of business between them." Those cases involved the ownership of drafts payable in 30 or 60 days, drawn by the claimants upon their customers, deposited in the bank to their credit, pursuant to a statement in the pass book:

" 'This bank, in receiving checks or drafts on deposit or for collection, acts only as your agent, and, beyond carefulness in selecting agents at other points and in forwarding to them, assumes no responsibility.' "

There were not, however, the provisions or circumstances that we have in this case. The item was the claimant's own draft. The evidence of the bank officer was that they regarded themselves as the agents of claimant "in case the collecting bank should fail to collect it." Whether the case may be fairly distinguished or not, the well settled principles above set out should control here.

Construing the transaction in its entirety and in its connections in the light of the well known banking practices we think that the words "this bank acts only as depositor's collecting agent" were not employed in a technical sense and cannot be given the effect of defining the exact and complete legal relationship between intervener and the bank. The bank took title to the checks. Interveners became a depositor. They agreed that the court might decide to offset the $1,000 note and have not appealed.

In the absence of any contract, this court is committed to the proposition that the title to all deposits passes immediately to the bank. It is a matter of common knowledge that prior to the use of the deposit contracts, such as the one involved in this

case, banks frequently found themselves in trouble on account of the negligence of their corresponding banks in making collections. They also found themselves in trouble because certain depositors refused to acknowledge the charge back on items not collectible. This led to the adoption of different contracts of the general type of the one involved in this case.

They are all contracts made for the purpose of and with the intention of protecting the bank. A close analysis of this particular contract bears no other interpretation than that it does not modify the old rule often expressed by this court, to wit: that the title to such items passes to the bank at the time of deposit, except in two particulars:

(a) In making collections, the depositary bank reserves the right to charge back to the customer's account the amount of any uncollectible item.

(b) The bank definitely protects itself by a specific expression in the contract from the result or results of the negligence of any corresponding bank, in handling these items for collection.

This particular case must be determined by the interpretation to be placed upon the contract. We have no statute on the subject. Our previous decisions have clearly laid down the general principle involved, and the only inquiry here is to what extent does this contract modify the general principle? We have then left only an interpretation of the contract. Inasmuch as it can only be construed to mean a modification of the general rule in this state to the extent of allowing a charge back and protecting the bank from the results of the negligence of collecting corresponding banks, it necessarily follows that the title to these checks passed to the bank, subject only to the right to charge back uncollectible items.—Reversed.

EVANS, KINDIG, DE GRAFF and GRIMM, JJ., concur.

FAVILLE, J. (dissenting)—I deem it proper to state my reasons for disagreeing with the majority opinion in this case.

On or about June 16, 1930, the superintendent of banking was appointed receiver of the Security Trust & Savings Bank, of Fort Dodge, Iowa. After said appointment the appellees herein filed their claim and petition of intervention wherein

1210

they sought to have their claim against the receiver established as a preferred claim.

The facts of the case are not in serious dispute. The appellees are a partnership. May 17, 1930, was a Saturday, and, according to the custom of said bank, it was open for business between the hours of seven and eight o'clock in the evening of said date. On said evening the appellees deposited some seventy-two checks drawn on other banks than the depositary bank and aggregating $2,575.45. The checks were all indorsed by the appellees without restriction. It appears that the checks were brought to the bank by one of the partners and were duly indorsed. It appears that a deposit slip was made out by one of the partners, with a slip attached, listing the checks by amount, and that an officer of the bank made out a deposit slip and entered the amount of the deposit in the pass book of the appellees. The pass book contained the following recital, printed in said book:

"In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for defaults or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

The bank did not open for business on Monday morning, May 19, and on that date a representative of the banking department took charge of said bank, and shortly thereafter the receiver was appointed.

It was stipulated that the regular clearing of Fort Dodge banks was at 11:30 o'clock on each business morning, and that checks deposited in any bank after clearing were held for clearing until the next business day.

On Monday, May 19, one of said partners went to the bank

to inquire about said checks and was informed that the checks had been sent for clearance and could not be returned.

Upon final analysis the case resolves itself into a consideration of the single proposition as to whether or not, under the record in this case, the deposit of said checks in said bank created the relation of debtor and creditor or the relation of principal and agent between appellees and the bank. It is the contention of the appellees that the printed statement in the pass book in which said deposit was entered by the bank became a contract between the appellees and the bank, and that under and by virtue of said contract the relation of principal and agent was created, and that the closing of said bank by reason of its insolvency and the appointment of a receiver terminated said agency, and that the appellees as principal are entitled to recover said checks or the full value thereof from the receiver as a preferred claim.

The precise question does not appear to have been before this court before for determination.

The bank did not open for business on Monday, the 19th. It held the checks uncollected at that time. It appears that the checks were evidently cleared by the examiner-in-charge after the bank failed to open for business.

Under the law, if the relation of principal and agent existed between the depositor and the bank, the insolvency of the bank, while still holding the checks, would revoke the agency and appellees would be entitled to recover the checks, and if the checks were subsequently collected by the receiver, the appellees would be entitled to a preference in the assets of the insolvent bank. North Carolina Corp. Com. v. Merchants' & Farmers' Bank, 50 S. E. 308 (N. C.); Manufacturers' Nat. Bank v. Continental Bank, 148 Mass. 553 (20 N. E. 193); State v. Banking Corp., 241 Pac. 626 (Mont.); Wilkinson v. Hogansville Banking Co., 154 S. E. 789 (Ga.); Macon Grocery Co. v. Citizens' Bank, 155 S. E. 57 (Ga.).

In Acme Hay & Mill Feed Co. v. Metropolitan Nat. Bank, 198 Iowa 1337, we discussed the question somewhat. In said opinion we said:

"The rule supported by the very decided weight of authority is, however, that, where a check or draft is deposited by a customer and credit given therefor by the bank on his account

as cash, against which he has an immediate right to draw, in the absence of any understanding as to how it shall be treated, or proof of circumstances from which such an understanding may be inferred, *prima facie* the title to the paper passes to the bank.''

We also quoted from 2 Morse on Banks and Banking (5th Ed.), section 575, as follows:

''A deposit being made by a depositor in a bank, in the ordinary course of business, of money, or drafts or checks received and credited as money, the title to the money or drafts or checks is immediately vested in and becomes the property of the bank,'' and cited a very large number of cases supporting said text.

In that case, however, there was no evidence of any agreement, written or oral, and no evidence of any custom relating to such transaction, nor as to the prior course of dealing between the parties.

In Palo Alto County v. Ulrich, 199 Iowa 1, we said:

''Whether checks or drafts taken by a bank from a customer and credited to his account are received as a deposit, and the bank becomes the owner of the paper, or are merely taken for collection, and the bank is but the agent of the depositor, depends, in the absence of an express agreement, upon the intention of the parties, as disclosed by the circumstances of the transaction. Where a customer of a bank indorses to the order of the bank checks or drafts, and is given credit for the amount thereof upon his account, as cash, and has the right to check against the credit so given, in the absence of an agreement or understanding to the contrary, or proof of circumstances from which such an understanding may be inferred, the presumption is that title to the paper passes to the bank; and the relation of debtor and creditor is created. And the mere fact that the bank has a right to cancel the credit and charge back to the customer the amount for which credit was given, if the paper is not paid, is not alone sufficient to show that it was taken for collection. The exercise of such a right is no more than the enforcement of the depositor's liability, as the drawer or indorser of dishonored paper.''

It is to be noticed that this case discusses the rule applicable "*in the absence of an express agreement.*"

Again, in Dubuque Fruit Co. v. Emerson & Co., 201 Iowa 129, at page 132, we said:

"The numerical weight of authority is to the effect that, when a person brings a draft to his bank and said draft is made payable to the bank or is unrestrictedly indorsed to it, and requests that the amount thereof be put to his checking account and subject to his personal check, and the bank complies with the request, *and nothing more appears,* it will be conclusively presumed that the bank has become the unqualified and absolute purchaser and owner of the draft, and consequently the owner of any proceeds derived therefrom. This theory of the law is in harmony with the well accepted canons of business. It is the natural construction of the action of the parties themselves, and the rule results in fixing definitely the relations of the parties, which is no small virtue in the realm of law." (Writer's italics.)

In Tropena v. Keokuk Nat. Bank, 203 Iowa 701, we said:

"We have adhered to the rule that, where a check or draft is deposited by a customer, and credit given by the bank on his account as cash, against which he has an immediate right to draw, in the absence of an understanding as to how it shall be treated, or proof of circumstances from which such an understanding may be inferred, *prima facie* the title to the paper passes to the bank."

In Andrew v. Marshalltown State Bank, 204 Iowa 1190, we considered a case where checks were deposited in a bank and the bank book contained the following recital:

" 'Always bring your book with your deposit. See that the entries agree with your ticket. This bank receiving out of town checks and other collections acts only as your agent, and does not assume any responsibility beyond due diligence on its part, the same as on its own paper.' "

In that case the record did not show upon what bank or banks the checks were drawn, or whether they were located within or without the city of Marshalltown, and we held that the claimant had failed in his proof to come within the terms of the recitals in the pass book.

1214

In Southern Surety Co. v. West Side State Savings Bank, 207 Iowa 910, we said:

"A status of depositor and depository arises out of a contract. So, in the same way, the relationship of principal and agent is brought forth. Proof will determine this dispute, as it does all other controverted issues of facts. If the appellee was merely the agent of the defaulting trustee, then the status of debtor and creditor did not exist."

It will be observed that throughout this line of decisions we have recognized the rule that it becomes a fact question as to whether or not the relation between the depositor and the bank was that of principal and agent or of debtor and creditor, and that this *is to be determined either from all the facts and circumstances surrounding the case, in the absence of an agreement, or, if there is an agreement, then by its terms and provisions.*

As is frequently repeated in our decisions, the cases throughout the country are in conflict on the question and it is impossible to reconcile them. I will consider a few of them.

In Taft v. Quinsigamond Nat. Bank, 52 N. E. 387, the Supreme Judicial Court of Massachusetts considered the general rules applicable in a case of this character. The court said:

"The deposit of money by a customer to his credit in a drawing account, without more, creates between the bank and the customer the relation 'of debtor and creditor, not of agent and principal.' Carr v. Bank, 107 Mass. 45. So, when, without more, a bank receives upon deposit a check endorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with, and indicates, a sale, in which, as with money so deposited, the check becomes the absolute property of the banker. The matter may be regulated by statute, as in the state of New York, or there may be general usages of business obtaining in the locality which color the transaction. So, a bank, by general notices printed on its pass books or deposit slips, or otherwise brought to the knowledge of its depositor, or by agreement with the particular depositor as to his own deposits, or by crediting negotiable paper as paper, and not as cash, or by a particular contract in any special instance, may define its position as that of agent or purchaser."

In Jensen v. First Nat. Bank of White, 213 N. W. 854, the Supreme Court of South Dakota considered this question, and said:

"Among the points urged in support of the debtor and creditor relationship are that plaintiffs' indorsement of the check was unrestricted and that defendant did place the amount of the check to plaintiffs' credit. But those facts are not determinative of the relationship. The agreement of the parties is the determining factor."

The same situation is true in the case at bar.

It is contended in this case that the relation of debtor and creditor was created because of the fact that the deposit of the checks was placed to the credit of the depositors; that it absorbed an overdraft of some $600 which the depositors then had at the bank; that the indorsement of the checks was unrestricted. But, as stated in the South Dakota case, these facts do not determine the relationship of the parties where, as in the case at bar, there is an agreement between them which determines that said relationship.

In Gamble v. Sioux Falls Nat. Bank, 213 N. W. 857 (S. D.), a deposit was made and a deposit slip given which contained a recital similar to the recital contained in the appellees' pass book. The court reiterated the rule that by reason of the recitals upon the deposit slip the relation of principal and agent was created.

In In re Assignment of State Bank, 57 N. W. 336, the Supreme Court of Minnesota said:

"There is no question but that the general rule is that, upon a deposit being made by a customer in a bank, in the ordinary course of business, of money drafts or other negotiable paper, received and credited as money, the title of the money drafts or other paper immediately becomes the property of the bank; which becomes debtor of the depositor for the amount; and, if no other facts appeared except these, they would be held to conclusively show an intention of the parties that the paper should immediately become the property of the bank. But, after all, the question is one of the agreement of the parties, either express or implied, from the general course of business between them. There can be no doubt that if a draft or other paper

is delivered to a bank for collection, the mere fact that the indorsement of the owner is unrestricted, will not, as between him and the bank, make the latter the owner of the property. Neither is it conclusive upon the question of ownership of the paper that before the collection the amount of it is credited to the customer's account, against which he has the privilege of drawing by check.''

See, also, In re Bank of Minnesota, 77 N. W. 796 (Minn.); O'Hara v. Texas Nat. Bank of Fort Worth, 299 S. W. 649 (Tex.); Semingson v. Stockyards Nat. Bank, 203 N. W. 412 (Minn.).

In People's State Bank v. Miller, 152 N. W. 257 (Mich.), the court said:

''It seems to be a general rule that when checks or other commercial paper are deposited in a bank indorsed 'for collection,' or where there is a definite understanding that such is the purpose of the parties at the time of the deposit, the title to the paper remains in the depositor. See note to Fayette National Bank v. Summers, 105 Va. 689, 54 S. E. 862, 7 L. R. A. (N. S.) 694; 5 Cyc. 493. And the mere fact that the depositor is allowed to check against the credit does not change the import of the transaction, so as to preclude the bank from charging back the amount of credit if the check deposited is not paid. The bank may, as a matter of favor and convenience, permit checks to be drawn against it before payment; the depositor, in the event of nonpayment, being responsible for the sums drawn, not by reason of his indorsement, the check not having ceased to be his property, but for money paid.''

The authorities might be extended. I deduce from them the general rule that, where it is essential to determine whether the relationship between a depositor and the bank is that of principal and agent or debtor and creditor, in the absence of an express contract or agreement, either oral or written, it is proper to take into consideration all the facts and circumstances surrounding the transaction. It is proper to consider whether the form of indorsement was restricted or unconditional; whether the deposit slip contained any recitals indicating whether the deposit was made for collection or as a general deposit; the manner in which the deposit was treated by the bank with re-

gard to book entries; the right of the depositor to immediately check upon the deposit; the usual custom and usage, if any, as shown by the evidence; and any established course of dealing between the parties, as shown by the record. All these matters are proper to be considered in determining the relationship between the parties in the event that there is no agreement defining such relationship. In the case at bar, however, we not only have evidence with regard to the manner in which the deposit was handled, but we have the express agreement in the pass book, which is binding upon the parties and which definitely and certainly makes it clear that the deposit was received by the bank under the terms of said agreement as agent only of the depositor. We have no power to change or alter the terms of this agreement or to substitute another therefor. Were the record silent in regard to such an agreement, we could then take into consideration all the facts and circumstances surrounding the transaction for the purpose of determining whether the deposit was received by the bank as agent of the depositor or whether the relation of debtor and creditor was established. There are many cases reviewing factual situations under which the courts arrive at the conclusion that the relationship was that of debtor and creditor. But these cases do not assist us in the present case in view of the fact that there is here an agreement between the parties which expressly provides that the checks received for deposit are received by the bank *as agent of the depositor*. That being true, we can only recognize the relationship which the parties, by their mutual agreement, established. That relationship, under the record in this case, is that of principal and agent, and not of debtor and creditor.

It is interesting to note that the question as to whether the relation between the customer and the bank is that of principal and agent or debtor and creditor has also arisen in cases involving the power of the bank as to appointing subagents and its liability for the acts of subagents. Two distinct lines of cases arose, one under the so-called "New York rule" and the other under the "Massachusetts rule."

In Federal Reserve Bank v. Malloy, 68 L. Ed. 617, the Supreme Court of the United States said:

"The state decisions in respect of the liability of a correspondent bank to the owner of a check forwarded for collection

by the initial bank of deposit are in conflict beyond the possibility of reconciliation. A number of states, following the 'New York rule,' so-called, have held that there is no such direct liability; but that the initial bank alone is responsible to the owner. On the other hand, an equal, if not a greater, number of states following the 'Massachusetts rule,' have held exactly the contrary; viz., that the initial bank, by the mere fact of deposit for collection, is authorized to employ subagents, who thereupon become the agents of the owner, and directly responsible to him for their defaults. This court, in Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 28 L. Ed. 722, 5 Sup. St. Rep. 141, after reviewing the two lines of decisions, approved the 'New York rule.' But the rule may, of course, be varied by contract, express or implied.''

The Malloy case involved a statute of the state of Florida, which is as follows:

'' 'That when a check, draft, or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks, and that the maker, indorser, guarantor, or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received, and that when a bank receives for collection any check, draft, note, or other negotiable instrument, and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part, as aforesaid.' ''

In respect thereto the Supreme Court said:

''Here the relations of the payee to the initial bank of deposit are controlled by the Florida statute with respect to which it must be presumed they dealt with each other. This statute had the effect of importing the 'Massachusetts rule' into the contract, with the result that the initial bank had implied authority to intrust the collection of the check to a subagent, and that

subagent, in turn, to another; and the risk of any default or neglect on their part rested upon the owners."

It is to be observed that the statute of Florida which the Supreme Court of the United States upheld is in many respects almost identical in effect with the contract involved in the case at bar. One refers to items "*deposited* for *credit* or for collection," the other to items received "for deposit or collection." The effect is the same. Certainly if the Florida statute is valid and effective, it cannot well be contended that a contract entered into between the bank and the depositor to the same effect is invalid.

The state of Minnesota also has a statute on the subject, which is Ch. 138 of the Laws of Minnesota, 1927, and is as follows:

"Any bank, savings banks or trust company (hereinafter called 'bank') doing business in this State, in receiving items for deposit or collection, in the absence of a written agreement to the contrary, shall act only as the depositor's collecting agent and shall have no responsibility beyond the exercise of due care. All such items shall be credited subject to final payment in cash or solvent credits. Such bank shall not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. Such bank or correspondent may send items, directly or indirectly, to any bank including the payer, and accept its draft, check, or credit as conditional payment in lieu of cash. It may charge back any item at any time before final payment whether returned or not."

Like the Florida statute, and like the contract in this case, it is to be observed that it covers items received by a bank "for *deposit* or *collection*." It has been held that under this statute there is a conclusive presumption that when a bank received an item for *deposit* it "became merely the depositor's collecting agent," and that the relation of debtor and creditor did not exist between it and the depositor when the deposit was made, where there was no written agreement to the contrary. Schram v. Askegaard, 34 Fed. Rep. (2d) 348.

In this state we do not have such a statute, but parties certainly have a right to enter into such a contract and to fix

their relationship by agreement. It is a matter of common knowledge that such contracts or ones of like import are in general use in this state.

I think that the decree of the trial court establishing the appellees' claim as a preferred claim against the receiver was correct.

I am authorized to say that Wagner, C. J., and Stevens and Albert, JJ., join in this dissent.