R. DAVIS, Appellee, v. WESTERN HOME INSURANCE COMPANY, Appellant.

Fire Insurance: POLICY; CONDITIONS AS TO RISK: CONSTRUCTION. The use of a corn-sheller, together with an engine and boiler for the purpose of propelling same, is within the meaning of a provision in a policy of insurance against fire, declaring that such policy will be rendered void if, without permission in writing thereon, "there be any change in the exposure, by the erection or occupation of adjacent buildings, or by any means whatever within the control and knowledge of the insured."

*Appeal from Cass District Court.* — HON. H. E. DEEMER, Judge.

TUESDAY, OCTOBER 28, 1890.

ACTION on a policy of insurance to recover for the loss sustained by plaintiff, by reason of the destruction by fire of the property insured. There was a judgment upon a verdict for plaintiff. The defendant appeals.

*Cummins & Wright* and *Phelps & Temple*, for appellant.

*Willard & Willard*, for appellee.

BECK, J.—I. The policy upon which the action is brought covered ear corn contained in two cribs. Upon one crib the amount insured was sixteen hundred and sixty-five dollars; on the other, three hundred and thirty-five dollars. The crib first named was burned, and the corn contained in it destroyed. The plaintiff seeks, in this action, to recover for this loss. The policy

contains a condition in the following language: "The policy shall be void and of no effect if, without permission therefor in writing hereon, the assured shall now have, and hereafter make or procure, any other contract of insurance on property covered in whole or in part by this policy,   *   *   *   or if there be any change in the exposure by the erection or occupation of adjacent buildings, or by any means whatever in the control or knowledge of the assured. * * *" The evidence tended to show that the assured brought, or caused or permitted to be brought and operated, a sheller propelled by steam, and the engine and boiler furnishing the power, quite near the corn-crib, and that the fire originated from, and was caused by, the use of such engine in dangerous proximity to the corn-crib. Thereupon the court below gave to the jury the following instruction: "It is provided in the policy 'that this policy shall be void and of no effect if, without permission therefor in writing hereon, there be any change in the exposure, by the erection or occupation of adjacent buildings, or by any means whatever within the control and knowledge of the assured.' Now, the construction of this clause is for the court to determine, and the effect of it is that the exposure referred to therein, in order to avoid the policy, must be by the erection or occupancy of an adjacent building, or by some means of like character; that is, some permanent erection or structure must have been placed in proximity to the crib which contained the corn, or the occupancy of some building standing at the time the policy was issued, adjacent to the said crib, must have been changed so as to increase the hazard, in order to come within the terms of this provision. And the use of a steam-power to run a sheller in shelling the said corn would not come within the prohibitory clause of the policy referred to in these instructions."

II.   In our opinion the court below erred in this instruction. It is plain that the policy cannot bear the construction therein put upon it . It will be observed that the condition of the policy in question is against

"change in exposure." The word "exposure" means "the state of being exposed," "openness to danger; accessibility to anything that may affect especially detrimentally." It is a word much used in the business of insurance, in the sense of this definition, to indicate danger of destruction or injury by fire, to property insured, from external sources, and not inherent to the property itself. The word does not in the meaning contemplate any particular source of danger. If danger results to the property from contiguous buildings because of their occupation, from pursuits, whether carried on in a building or out of it, from the practice or habit to use fire, from the running of railroad locomotives, and the like, they are said to be exposures to the property. The condition of the policy is against any change in the exposure by the erection or occupation of adjacent buildings, or by any means whatever in the control of the assured. Exposure from "the erection or occupation of adjacent buildings" is especially prohibited by specific language. · All exposures "by any means whatever" are forbidden by general language.

Counsel insist that "it is a general rule in the construction of contracts and statutes that, when general words follow special words, the general words are controlled and governed by the special words." The rule is not accurately stated as it is found in the authority cited by counsel. 2 Pars. Cont. p. 13, note 2. It is there stated in this language:  "When, in a statute, general words follow particular ones, the rule is to construe them as applicable to subjects *ejusdem generis.*" We may assume what is probably true, that this rule applies to contracts. The condition of the policy under consideration is against exposures. The erection or occupation of adjacent buildings is specially named, as causes producing exposure. In the general language, exposures, "by any other means whatever within the control or knowledge of the assured," are forbidden. The special words forbid "the erection and occupation of adjacent buildings" so as to change or increase the exposure.

If they are erected and occupied for the use therein of dangerous elements, as fire, the exposure is increased. Now it is the use of the element of fire, or other dangerous thing, that is provided against. It is plain that the buildings *per se* are not exposures, and it is equally plain that anything which causes the use of fire or other dangerous elements, by which a building is made an exposure, is *ejusdem generis*. The rule as applicable to this case does not mean that the cause of an exposure, contemplated by the general words of the condition, shall be buildings or something of the same nature or character, but shall be *ejusdem generis*, of the same nature, kind or character, in causing exposure to fire. In our opinion the condition of the contract has not regard to the form, substance, use or character of the thing creating the exposure. But anything in which fire is used so as to be dangerous, or any occupation when it is so used, or any acts, habits or customs endangering the insured property, which are within the control or knowledge of assured, causes an exposure within the meaning of the conditions of the policy under consideration.

Other questions argued by counsel need not be considered, as the views we have expressed are decisive of the case upon this appeal. The judgment of the district court is REVERSED.