Mamie Schlosser et al., appellees, v. Eben Van Dusseldorp
et ux., appellants.

No. 49878.

(Reported in 101 N.W.2d 715)

March 8, 1960.

522

Brierly, McCall & Girdner, of Newton, for appellants.

Cross, Hamill, Selby & Updegraff, of Newton, for appellees.

PETERSON, J.—This is a quieting-title action as to a farm of 190 acres, located immediately north of Colfax and south of the Skunk River. Defendant Eben Van Dusseldorp claims he holds a lease on the property for the mining of gravel. Janet Van Dusseldorp is joined in the case as his wife. The trial court decided in favor of plaintiffs. Defendants have appealed.

I. Edward R. Schlosser was the owner of several hundred acres of land north of Colfax. The larger tract (about 240 acres) was north, and 190 acres was south of the Skunk River. Most of the land north of the river was sandy and filled with brush. The land south of the river was rented to Harold Rogers, for farming.

Sometime prior to June 7, 1948, Mr. Schlosser and Mr. Van Dusseldorp had been discussing a lease and agreement, permitting the defendant to test the farm of Mr. Schlosser near the Skunk River for gravel in sufficient quantity to be of commercial value.

On that day they went to the office of an attorney in Colfax and had him prepare a lease and agreement for them. It is known as Exhibit B. The lease is composed of two main divisions: 1st, description of the land involved. 2nd, the right to test the property, amount to be paid by lessee to lessor if gravel was found in merchantable quantities, terms of payment, and length of lease.

Neither the parties nor the attorney knew the exact legal description of the land, so it was described as best they could from memory and a plat, but in order to cover what they had

in mind at that time ·they put a general clause in the lease stating: "the above is meant to cover all land owned by first party in Sections 1 and 2, Township 79 North, Range 21 West of the 5th P. M., Jasper County, Iowa." This included land both north and south of the Skunk River.

As to the terms, the lease and agreement provided defendant should have one year in which to test the matter of existence and merchantability of gravel. If gravel was found he should have a 10-year lease with option to renew for another 10 years.

Defendant agreed to pay Mr. Schlosser "the sum of ten (10) cents a yard, or if by weight the sum of seven (7) cents a ton, for all gravel removed and sold."

Defendant made the tests north of the river within the year and discovered gravel in merchantable quantities. He made no tests south of the river. Consequently on July 21, 1949, he entered into an agreement with Mr. Schlosser confirming and ratifying the lease and agreement of June 8, 1948, and establishing the lease for 10 years from June 7, 1949, with right of renewal for an additional 10 years, which is known as Exhibit C.

Defendant proceeded with the performance of his lease, and made annual accounting and payment of royalty to Mr. Schlosser until 1954.

In the meantime defendant had opened another gravel pit on the land immediately north of Mr. Schlosser's land. He asked Mr. Schlosser if he could be permitted to discontinue operations on his farm, for an agreed consideration, for five years, so he could mine the land to the north.

In November 1954 the parties met in the office of John N. Diehl, an experienced attorney of Newton, and he prepared a new lease and agreement for them, which was signed by all parties. It is the subject of this controversy, and is known as Exhibit D.

Like Exhibit B it was divided into two divisions. The first contained the description of the property. There were two changes as to the description. An error had been made in Exhibit B as to the description of a forty-acre tract north of the river. This was corrected. The other change was that the following words were added to the detailed description: "said description is meant to cover all land owned by first parties in

Section One (1) and Two (2) Township Seventy-nine (79) North, Range Twenty-one (21) West of the 5th P. M., Jasper County, Iowa, *and North of the Skunk River.*" (Emphasis ours.)

The second division provided Mr. Schlosser would waive gravel development on his land for five years, on condition that defendant pay him: $1000 for 1955, and $250 each year for 1956, 1957, 1958 and 1959. Then in 1960, and each year thereafter, $1000, or royalty as provided in the original lease, whichever was greater.

In the second division appears a clause which appellants contend pertains to the description in the original lease, and which they contend includes land south of the river. The clause is: "and do hereby affirm the original lease."

Appellants argue that what we call the first division of the agreement is only a recital division, and that the second division is the operative part of the agreement, and that the operative section controls. As a matter of construction of the contract we do not concur in this position.

■ ■ II. A cardinal rule as to construction of contracts is to ascertain the intention of the parties, and give effect to such intention. Des Moines Union R. Co. v. Chicago G. W. R. Co., 188 Iowa 1019, 177 N.W. 90, 9 A. L. R. 1557; Streator Clay Mfg. Co. v. Henning-Vineyard Co., 176 Iowa 297, 155 N.W. 1001; Beal v. Milliron (Iowa, N.O.R.), 267 N.W. 83; Haggin v. Derby, 209 Iowa 939, 229 N.W. 257; Keck v. McKinstry, 206 Iowa 1121, 221 N.W. 851; Andrew v. Security Trust & Sav. Bk., 214 Iowa 1199, 243 N.W. 542; 12 Am. Jur., Contracts, section 227; 17 C. J. S., Contracts, section 295.

There is drastic conflict in the testimony of the parties. Mr. Diehl and Mrs. Schlosser testify that there was a meeting of the minds to the effect that only the land north of the river was to be included after the execution of Exhibit D.

Mr. Diehl testified there were four changes discussed and to be made in the new agreement, Exhibit D: 1. Mrs. Schlosser was to sign the new agreement, which she did. 2. Correction was made as to one forty, misdescribed in Exhibit B. 3. Mr. Van Dusseldorp was granted a waiver as to five years of operation.

4. The new agreement was to pertain only to Mr. Schlosser's land *north of the river*.

The question involved in this case arose as a result of Mr. Schlosser's death on May 17, 1956. Plaintiffs are his widow and children. The executor, widow and children held a public sale of property in the estate on October 29, 1956, which sale included the 190 acres south of the Skunk River. There had been rumors defendant was claiming a gravel lease on the farm. Mr. Van Dusseldorp was at the sale. The auctioneer announced the farm would be sold free and clear of liens or encumbrances except the lease of Mr. Harold Rogers, the tenant who was farming the place. Mr. Van Dusseldorp raised no question at the sale about the announcement.

Mr. Diehl testified he talked to defendant at the sale and told him he heard rumors about a gravel claim. He told defendant he would sue him if he was making such claim. Mr. Diehl testified, "in response to my question as to whether he [defendant] was making a claim, Mr. Van Dusseldorp said he was not."

Mrs. Schlosser testified she heard rumors after the sale that Mr. Van Dusseldorp was still claiming gravel rights on the Rogers farm. She had purchased the farm at the auction sale. She called him by telephone and explained she wanted a clear title, and he said: " 'Whatever John [John Diehl] says is okay, go right ahead Mamie, it's all right with me, whatever John says is okay. * * * I don't want the land.' "

Mr. Van Dusseldorp denied these conversations. Two witnesses testified for him. Mr. Glen Allen Wheeler heard part of the conversation at the farm sale. He did not hear enough of it to be of any probative value.

Mr. Richard Vacha was defendant's bookkeeper. He claims he was present at a conference in Mr. Diehl's office, when accounting as to royalties was being made. He attempted to testify about Exhibit D. There were several meetings about it, and Mr. Vacha apparently was not present at the meeting where all details were finally decided.

A circumstance which pertains to the intention of the parties as to the description in Exhibit D is the fact that at no time between 1948 and 1954 had Mr. Van Dusseldorp made any

tests or exploration south of the river. He testified: "We ran the tests both east and west of Highway 117 [the Schlosser property at this point is north of the river], but we didn't run any south of the river as being that is a man made river."

In Haggin v. Derby, supra, we said in 209 Iowa, at page 945: "The rule of primary importance in the interpretation of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles."

Also see Andrew v. Security Trust & Sav. Bk., supra (page 1204 of 214 Iowa): "The meaning and effect of a contract, and the rights of the parties to it, are to be determined from their intention as evidenced by what they say and do and all that they say or do at the time and by their course of business."

Taking into consideration the evidence and all the circumstances, it is clear that it was the intention of the parties that only land north of the river was contained in the latest agreement, Exhibit D.

III. It is also a well-established rule of construction that where in a contract there are special and general agreements, referring to the same subject, the special agreement controls. Davis v. Western Home Ins. Co., 81 Iowa 496, 46 N.W. 1073, 10 L.R.A. 359, 25 Am. St. Rep. 509; State v. Commercial Casualty Ins. Co., 125 Neb. 43, 248 N.W. 807, 88 A.L.R. 790; Smith v. McCullough, 104 U.S. 25, 26 L. Ed. 637; 1 Restatement, Contracts, section 236; 12 Am. Jur., Contracts, section 244; 17 C. J. S., Contracts, section 313.

In the case at bar a specific statement was made in the first part of the agreement: "North of the Skunk River." It was clear, definite and unambiguous. Later appears the general statement: "and do hereby affirm the original lease." If there is any conflict between these two statements the first and specific statement prevails.

In State v. Commercial Casualty Ins. Co., supra, the Nebraska Supreme Court made a statement on page 49 of 125 Neb., which we approve, as follows: "It is a rule that, where there are general and special provisions in a contract, relating to the same thing, the special will control over the general provisions, and, if the contract is fulfilled according to the

special provisions, the contractor has fully complied with the terms of his contract."

IV. The ultimate answer to the question is that two businessmen entered into a written agreement; both of them signed it and both of them are bound by it. Eben Van Dusseldorp's only defense, and his only answer to the claim of appellees, is that he did not know the clause "North of the Skunk River"[1] was in the agreement. Mr. Schlosser and Mr. Van Dusseldorp met in Mr. Diehl's office in 1953 and 1954 and discussed all changes to be made. Mr. Diehl prepared Exhibit D in November 1954. Mr. and Mrs. Schlosser signed it, and Mr. Diehl mailed it to Mr. Van Dusseldorp. He kept it for some time. He had it in his possession, with every opportunity to quietly study it. He admits receiving it in the mail. He then signed it and returned it to Mr. Diehl.

The trial court obviously believed he read it. There was a very important provision in the agreement in his favor. That was the waiver of five years active operation under the lease, and he was still to retain the lease for the future as to the land north of the river, where he had been operating.

Either Mr. Van Dusseldorp read the provision in Exhibit D that the lease only covered the land north of the river, or if he did not, he was inexcusably negligent. He was an experienced and big businessman in his community. He was a general contractor, and was also engaged in the project of gravel mining. From 1949 to trial of the case in 1957 he paid Mr. Schlosser or his estate over $20,000 in royalties and rentals. This represents a large operation, because Mr. Schlosser's share was only 10¢ a yard or 7¢ a ton.

A man of that type would hardly sign an important document without reading it. But whether he did or not, in the absence of fraud or mistake, and none is claimed in this case, he is bound by his signature. Ignorance of the contents of an instrument does not ordinarily affect the liability of one who signs it. First Nat. Bk. v. Ten Napel, 198 Iowa 816, 200 N.W. 405; Preston v. Howell, 219 Iowa 230, 257 N.W. 415, 97 A.L.R. 1140; 12 Am. Jur., Contracts, section 137; Midland Mortgage Co. v. Rice, 197 Iowa 711, 198 N.W. 24; Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 8 Cir., 83 F. 437; Garner

v. Johns, 182 Iowa 684, 166 N.W. 111; Turnis v. Ballou, 201 Iowa 468, 205 N.W. 746; Houchin v. Auracher, 194 Iowa 606, 190 N.W. 3; State Savings Bank v. Deal, 200 Iowa 490, 203 N.W. 293; Bonnot Co. v. Newman Bros., 108 Iowa 158, 78 N.W. 817.

In Preston v. Howell, supra (page 236 of 219 Iowa), this court said: "It is also the settled rule of law that if a party to a contract is able to read, has the opportunity to do so, and fails to read the contract, he cannot thereafter be heard to say *that he was ignorant of its terms* and conditions, for the purpose of relieving himself from its obligation." (Emphasis ours.)

In Chicago, St. P., M. & O. Ry. Co. v. Belliwith, supra, the Federal Court said at page 440 of 83 F.: "If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party."

This language was quoted and approved in Blossi v. Chicago & N. W. Ry. Co., 144 Iowa 697, 712, 123 N.W. 360, 366, 26 L.R.A., N.S., 255.

V. More than one half of the brief and argument on each side of the case was devoted to a discussion of the question of estoppel. It is based on the presence of Eben Van Dusseldorp at the public sale of the farm, and his failure to give any public notice of his claimed gravel lease on the farm.

Having decided the effectiveness of the contract, Exhibit D, against defendants, discussion of the question of estoppel is unnecessary.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.