Eleanor MOPPER, Appellee,

v.

CIRCLE KEY LIFE INSURANCE COMPA-
NY, An Insurance Corporation, Appellant.

No. 53698.

Supreme Court of Iowa.

Nov. 12, 1969.

Swisher & Cohrt, Waterloo, and Emmanuel Bikakis, Sioux City, for appellant and cross-appellee.

Stewart, Hatfield & Klass, Sioux City, for appellee and cross-appellant.

LARSON, Justice.

This law action for recovery of overwriting and renewal commissions, which plaintiff claims are due and owing under a Field Manager's Agreement, was tried to the court without a jury, pursuant to a stipulation of facts, and judgment in the sum of $9,285.60 was rendered in favor of plaintiff as of December 16, 1968, with a declaration that she was entitled to receive further commissions on premiums paid after December 16, 1968, for a period through the twentieth year of the agreement. Interest was granted only from the date of the judgment. Defendant appeals and plaintiff cross-appeals asking that the judgment be modified to allow interest from the dates when commissions became due her. We modify and affirm the judgment rendered herein.

In Division I of her petition the plaintiff, Eleanor Mopper, alleged inter alia that she was the beneficiary of an agreement entered into on or about July 1, 1966, by and between the defendant, Circle Key Life Insurance Company, and Sam Mopper, her deceased husband. She attached a copy of this agreement entitled "Field Manager's Agreement", marked Exhibit A, alleged performance of the agreement, and claimed the commissions on renewal premiums collected by defendant since Sam Mopper's death. In Division II she sought a declaratory judgment construing the contract and adjudicating the rights, status, and legal obligations of the parties thereunder. She later amended her petition to allege that Sam Mopper died on August

21, 1967, and on December 19, 1968, amended Division I by substituting new paragraphs 6 and 7 and the prayer to increase the amount of the claim and the period covered in the original petition.

When defendant's motion to dismiss plaintiff's petition, on the ground that the contract did not provide for the relief prayed and that no facts were pleaded which would allow any renewal overwriting commissions under the provisions of paragraph 4 thereof, was overruled by the court on August 13, 1968, answer was filed. Pursuant to a written stipulation of facts dated December 19, 1968, the matter was submitted to the court, and on December 26, 1968, it rendered its judgment thereon.

The pertinent parts of Exhibit A are as follows:

" * * *

"COMMISSIONS

"The Company will allow the Field Manager first year overwriting commissions, overwriting renewal commissions, and service fees, provided for herein on premiums paid on policies written and delivered by the Field Manager and by agents working under the jurisdiction of the Field Manager within the territory herein assigned to the Field Manager. * * *

"RENEWAL OVERWRITING COMMISSIONS

"2. Renewal overwriting commissions will be allowed the Field Manager while this agreement remains in full force and effect on premiums paid on policies written by the Field Manager and agents working under the jurisdiction of the Field Manager. Such renewal overwriting commissions shall be payable during the premium paying period in accordance with the Overwriting Commissions shown above.

"If at the time this agreement is terminated, the total annual paid premium which was written and produced hereunder during a calendar year (excluding Single Premium Policies, Paid-Up Policies, Annuities, and Life Insurance in force under a nonforfeiture option) is less than $25,000 no renewal overwriting commissions shall be allowed subsequent to the effective date of such termination.

"VESTING PROVISIONS

"3. If at the time this Agreement is terminated, the minimum aggregate amount of annual paid premium referred to in paragraph 2 above shall be $100,000, the Field Manager shall be allowed renewal overwriting commissions in accordance with paragraph 2 above, on renewal premiums paid after termination of the Agreement. The renewal overwriting commissions payable hereunder, after termination, shall be allowed in accordance with the Schedule of Vested Renewals. * * *

"TERMINATION UPON DEATH OR TOTAL DISABILITY

"4. This Agreement shall automatically terminate upon the death of the Field Manager or upon his becoming totally or permanently disabled, the determination as to such total and permanent disability to be in the sole discretion of the Company. If this Agreement is so terminated, all first year overwriting commissions and renewal overwriting commissions shall be allowed.

"Upon the death of the Field Manager, any payment hereunder shall be made to the beneficiary designated by the Field Manager, if living; otherwise to the executor or administrator of the estate of said Field Manager.

"GENERAL PROVISIONS

"5. * * * (k) First year overwriting commissions, renewal overwriting commissions and fees are subject to change at any time by written notice by the Company to the Field Manager, but no such change shall affect commission on any policy issued prior to the effective date of such change. This Agreement may be terminated at will, with or without cause, provided, however, that the Company must

show cause for termination after the Field Manager has attained $50,000 of in force paid premium, by ten (10) days' written notice prior to the effective date of such termination by the Company to the Field Manager, or by the Field Manager to the Company; provided that in the event of breach by the Field Manager of the provisions of sub-paragraphs (c), (e), (i), (j), (n), (o) and (q) of the General Provisions of this Agreement, the Company shall be entitled, at its election, to cancel this Agreement by written notice effective immediately, in which event the Field Manager shall have no rights or claims against the Company, and shall thereby forfeit any further payment of commissions or service fees which he might otherwise be entitled to hereunder; * * *."

In its August 13, 1968, ruling denying defendant's motion to dismiss, the trial court wrote:

"Plaintiff, Eleanor Mopper, by Division I of the Petition, seeks to recover claimed accrued overwriting commissions due her as beneficiary under contract between her deceased husband and defendant, and by Division II of the Petition asks for declaratory relief with respect to future commissions.

"The defendant has filed a Motion to Dismiss Divisions I and II.

"The general claims set out in Paragraphs 1, 2 and 6 of Division I of the motion give no grounds for dismissal. The general allegations of the petition are sufficient. By Paragraph 3 it is claimed that renewal overwriting commissions are only allowable while the contract is in full force and effect. This contention cannot be sustained in view of specific contractual provisions for allowance after termination.

"Paragraphs 4 and 5 of the motion go to the heart of the controversy and raise the matters principally discussed in argument and the briefs submitted by the parties. There could well be some doubt that the questions presented are yet ripe for decision. By the motion and the resistance

thereto filed by the plaintiff, however, the parties have tendered the issue between them and have, in effect, mutually asked for an adjudication of law points. They have fully argued the matter and submitted briefs thereon. The court will, therefore, now decide the questions presented.

"It is the position of the plaintiff that she is entitled to recover as beneficiary under the contract for certain overwriting commissions as provided by Paragraph 4 of the agreement which provides that if the contract is terminated by death of Mr. Mopper 'all first year overwriting commissions and renewal overwriting commissions shall be allowed.' It is the position of the defendant that the provisions of Paragraph 4 are subject to the provisions of Paragraphs 2 and 3 of the contract which require $25,000.00 annual paid premiums 'during a callendar year' and a minimum aggregate amount of annual paid premiums of $100,000.00 at the time of the termination before after-termination commissions are payable and that the plaintiff is only entitled to such commissions as Mr. Mopper would receive if he survived. This is the interpretation of Paragraphs 2 and 3 placed upon them by the parties and for the present purposes the court accepts such interpretation. Whether or not Mr. Mopper's premiums reached the $25,000.00 and $100,000.00 is not shown by the pleadings.

"A reading of the contract reveals that it provides that First Year Overwriting Commissions are payable whether or not the contract is in effect or is terminated (Par. 1). It further reveals that Renewal Overwriting Commissions are likewise payable while the contract is in full force and effect and, under certain circumstances, after termination, (Par. 2, 3, 4 & 5(k)) dependent upon the mode of termination. The contract may be terminated by: (1) either party giving the other ten days written notice thereof (P. 5k); (2) Immediately upon written notice in the event of breach of certain provisions of the contract (P. 5k); and (3) the contract is

automatically terminated upon death of the Field Manager or his total or/and permanent injury (P. 4).

"There are, therefore, three modes of termination and it is clear that each does not carry the same rights to overwriting commissions. Thus under termination (2) above for breach of contract by the Field Manager (5k) 'the Field Manager shall have no rights or claims against the Company, and shall thereby forfeit any further payment of commissions or service fees which he might otherwise be entitled to hereunder.' The court concludes that Paragraph 4 stands on its own language providing that 'all first year overwriting commissions and renewal overwriting commissions shall be allowed' upon termination by death. If the provisions of Paragraphs 2 and 3 were applicable to Paragraph 4, it could be expected that Paragraph 4 would contain a reference to them —just as Paragraph 3 contains a reference to Paragraph 2. Of some signification, also, is the provision of Paragraph 2 that such commissions shall be allowed 'subsequent to the effective date of the termination', a clear reference to a termination under Paragraph 5(k) other than for contract breach. With termination upon death there would be no 'effective date'. The provisions of Paragraph 3 provides for overwriting commissions 'in accordance with Paragraph 2 above', thus tying the two paragraphs together. This leaves the provisions of Paragraphs 2 and 3 applicable to all other situations not covered by Paragraphs 4 or 5(k) dealing with contract breach. It is the general provision which must yield to the specific provisions of Paragraph 4 dealing with termination by death (Small v. Ogden, [259 Iowa 1126] 147 N.W.2d 18). Only by thus viewing the contract can all words be given effect as is required (Greenberg v. Alter Company, 255 Iowa 899 [124 N.W.2d 438]). * * *"

On December 19, 1968, the parties signed and agreed to the following Stipulation:

"Plaintiff, Eleanor Mopper, and defendant, hereby agree to submit the issue raised in Divisions I and II of plaintiff's petition for decision by the court based upon the following stipulation:

"1. Exhibit 'A' attached hereto is the Field Managers Agreement prepared by defendant and entered into between Sam Mopper and defendant on July 1, 1966. Exhibit 'A' was in full force and effect at all times pertinent hereto.

"2. Exhibit 'B' attached hereto is a paid premium summary prepared by defendant showing all premiums and renewal premiums received by defendant from August 22, 1967, through December 16, 1968, on policies written and produced by Sam Mopper and his agents under the Field Managers Agreement designated as Exhibit 'A'.

"3. The figures appearing in the column 'Total' of Exhibit 'B' refer only to renewal premiums collected in the second and third year on the policies written by Sam Mopper and his agents. Figures appearing on Exhibit 'B' beside which an asterisk appears refers to first year premiums collected.

"4. The total renewal premiums collected by defendant from August 22, 1967, through December 16, 1968, on policies written and produced by Sam Mopper and his agents under Exhibit 'A' is the aggregate sum of $94,023.47. All of these renewal premiums were second or third year renewal premiums. Of the total renewal premiums collected by defendant in the sum of $94,023.47, $806.89 was collected on OLPUa85 type policies, and $93,216.58 was collected on KPC–F51 type policies. The OLPUa85 policies on which the sum of $806.89 was collected as premiums are policies Number 7932, 8754, 9005, and 9246, shown on Exhibit 'B'.

"5. It is stipulated and agreed that the court shall interpret the contract involved, the same being Exhibit 'A', and if the court shall determine that Paragraph 4 of the Contract alone applies as to the rights of

the plaintiff, then the court shall proceed to determine the amount of commissions which the plaintiff is entitled to under the record made in this stipulation, but if the court in interpretation of said Exhibit 'A', should determine that Paragraphs 2 and 3 of said Exhibit 'A' are material in the determination of the amount, if any, to which the plaintiff would be entitled, the said cause shall be reopened for the purpose of producing further testimony with respect to the effect of Paragraphs 2 and 3 and Addendum No. 2, dated July 1, 1966, which is attached to the Field Managers Agreement, on the amount of renewal commissions, if any, to which the plaintiff is entitled. Such reopening also shall permit plaintiff to introduce evidence on whether or not Sam Mopper had an oral Area Managers Agreement with defendant.

"6. If the court construes Exhibit 'A' so that Paragraph 4 thereof applies to plaintiff and that Paragraphs 2 and 3 do not apply, then plaintiff is entitled to recover under Division I of her petition and she is entitled to overwriting commissions of $9,321.65 for premiums collected by defendant on KPC–F51 type policies through December 16, 1968, and $16.13 for overwriting commissions on OLPUa85 premiums collected through December 16, 1968. Defendant is entitled to a credit of $52.18 upon the amounts set forth in this paragraph.

"7. Sam Mopper died on August 21, 1967, and plaintiff is his surviving spouse and beneficiary under Exhibit 'A'.

"8. * * *

"9. All exhibits attached hereto may be considered as evidence in this case.

"10. The defendant will receive all renewal premiums tendered to it in the future under any policies written and produced by Sam Mopper and his agents under Exhibit 'A' which have not lapsed, provided, however, that nothing contained in this paragraph shall prevent the defendant from contesting the validity of any policy.

"11. The defendant has and will continue to refuse to pay any renewal overwriting commissions on policies written by Sam Mopper or his agents under the terms of his Field Managers Agreement which were received or became payable subsequent to the death of Sam Mopper.

"12. Paragraphs 6 and 7 of Division I of the petition and the prayer under Division I of the petition may be amended by plaintiff to claim an additional sum due as overwriting commissions for all premiums collected by defendant through December 16, 1968.

"13. * * *

"14. Plaintiff agrees to dismiss forthwith Divisions III and IV of the petition with prejudice."

In its Memorandum of December 26, 1968, the trial court stated:

"Sam Mopper, now deceased, was a Field Manager for defendant insurance company under Agreement Exhibit A. His widow, Eleanor, was the beneficiary under the contract and she has brought suit to recover under its terms. It is her contention that she is entitled to recover certain overwriting commissions under the provisions of Paragraph 4 of the agreement. The defendant contends that before such recovery can be had it must be shown that the provisions of Paragraphs 2 and 3 have been met. This contention was urged by the defendant in a Motion to Dismiss heretofore filed and ruled on adversely to it on August 12, 1968. That ruling is adhered to and is incorporated by reference herein.

"The parties have submitted the case to the court upon a stipulation which provides, in Paragraph 6, that if the court so construes the agreement that the plaintiff, Eleanor Mopper, is entitled to recover a net of $9,285.60 for such commissions under Division I of the petition. The stipulation makes no mention of interest upon the commissions due under the agreement. Moreover, the premiums received are listed

in Exhibit B which shows the month in which they were received by the defendant, but not the day of the month. It would, therefore, be impossible to compute the interest and no allowance will be made therefor prior to judgment date.

"It follows that this plaintiff is entitled to declaratory relief under Division II of the petition. Divisions III and IV have been dismissed."

In its Findings of Fact the trial court found that Sam Mopper and defendant entered into agreement Exhibit A on July 1, 1966, that Sam Mopper died on August 21, 1967, that the plaintiff Eleanor Mopper is the beneficiary under such agreement, that there is due and owing to said beneficiary from the defendant through December 16, 1968, the sum of $9,285.60, and that the defendant has refused and will continue to refuse to pay any overwriting commission due subsequent to the death of Sam Mopper.

In its Conclusions of Law the trial court held that it had jurisdiction of the parties and of the subject matter, that "under the terms of Paragraph 4 of the contract, plaintiff is entitled to recover overwriting commissions from the defendant on premiums paid subsequent to the death of Sam Mopper without regard to Paragraphs 2 and 3 of the contract," that the plaintiff is entitled to declaratory relief under Division II of her petition, and that she is entitled to interest only from the date of this judgment.

Judgment was rendered accordingly.

Although appellant assigns four errors relied upon for reversal, and the cross-appellant assigns one error, the primary issue is whether the trial court erred in its conclusion of law that under the terms of paragraph 4 of the contract the plaintiff is entitled to recover overwriting commissions from the defendant on premiums paid, or to be paid, subsequent to the death of Sam Mopper without regard to paragraphs 2 and 3 of the contract.

I. Appellant correctly contends the right of the agent to commissions, salary, or other compensation, is dependent on the terms of the contract of employment or agency entered into with the insurer. We also agree with appellant that, to determine what compensation is to be paid to an agent under the contract of employment, the contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument, and not from detached portions thereof. Archibald v. Midwest Paper Stock Co., 260 Iowa 1, 148 N.W.2d 460; 3 Am.Jur. 2d, Agency, § 247, p. 614. We also agree, in construing an insurance agent's contract, a construction which makes the contract fair and reasonable will be preferred to one which leads to harsh and unreasonable results, and, unless the contract construed as a whole is ambiguous, it must be enforced as written.

In the interpretation of such a contract as we have here, the objective is to ascertain the meaning and intention of the parties as expressed in the language used. Schlosser v. Van Dusseldorp, 251 Iowa 521, 524, 101 N.W.2d 715, 717; Coon Valley Gravel Co. v. Chicago, R. I. & P. R. Co., 241 Iowa 487, 490, 41 N.W.2d 676, 678. It is the duty of the courts to give effect to the language of the contract in accordance with its plain and ordinary meaning, and not make a new contract for the parties. B-W Acceptance Corp. v. Saluri, 258 Iowa 489, 495, 139 N.W.2d 399, 403; Small v. Ogden, 259 Iowa 1126, 1129, 147 N.W.2d 18, 20. Courts will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, and only where the language of the contract is of doubtful meaning will there be resort to rules of construction. Small v. Ogden, supra; Bruhl v. Thul, 257 Iowa 889, 893, 134 N.W.2d 571, 574. If the language of the contract is clear and unambiguous, the intention expressed therein controls, rather than what is claimed was the intent of the drafter of the agreement. Small v. Ogden, supra;

Bruhl v. Thul, supra, and citations; 17 Am.Jur.2d, Contracts, § 244, p. 631.

II. A careful examination of the entire contract involved here discloses no uncertainty or ambiguity. By application of the above mentioned rules we entertain no genuine uncertainty as to the manifest intention of the parties.

The first page of the contract provides for commissions and service fees as "provided for herein" on premiums paid on policies written and delivered by the field manager and by his agents, and we must therefore consider the remainder of the contract to ascertain what terms or conditions are prescribed for the allowance of those commissions. Paragraph 1 of the contract deals with first year overwrite commissions only and is not involved in this dispute.

It is appellant's position that unless provisions are made in a contract of this kind, there is no right to commissions on renewal premiums after the death of the agent terminates the contract. It then points to the first paragraph of paragraph 2 which *allows* renewal commissions while the agreement remains in full force and effect, and the second paragraph of paragraph 2 which provides that *if* at the time of termination the total annual paid premium which was written and produced under the contract during a calendar year is less than $25,000, no renewal commissions shall be allowed subsequent to the effective date of the termination. Although it appears Sam Mopper did produce more than the minimum here stated for each year prior to his death, appellant maintains this paragraph does not provide for the allowance of renewal commissions subsequent to the termination date, even where the amount of business per year exceeds $25,000. Paragraph 3, it says, pertains to "Vesting Provisions" and provides that *if* at the time the agreement is terminated, the minimum aggregate amount of paid premiums referred to in paragraph 2 is above $100,000, the field manager shall be allowed renewal commissions in accordance with paragraph

2 on renewal premiums paid after termination of the agreement. In other words, unless the total aggregate of annual premiums on policies written and produced during a calendar year and prior to termination shall be $100,000, there would be no vesting or allowance of renewal commissions paid after termination. It maintains the death of Sam Mopper automatically terminated the contract on August 21, 1967, and thus he did not qualify for further commissions under paragraph 3. Were it not for the provisions of paragraph 4 of the contract, we understand appellee would not disagree with appellant's contentions. However, as appellant concedes, paragraph 4 deals specifically with the rights of the parties when the field manager dies before the agreement is otherwise terminated. It provides that the agreement is automatically terminated upon the death of the field manager, and further provides, "If this Agreement is so terminated, all first year overwriting commissions and renewal overwriting commissions shall be allowed" and that "any payment hereunder shall be made to the beneficiary designated * * *."

Appellant argues that by the use of the word "all" in paragraph 4, the parties intended that the renewal overwriting commissions which are allowed on renewal premiums paid after death are those commissions on premiums paid which the agent was qualified to receive had he survived as provided in the entire instrument. It complains that the trial court ignored paragraphs 2 and 3 of the agreement, especially paragraph 3, as to the production requirement necessary for renewal commissions subsequent to termination. It premises this contention on the rule that the parties' intention must be arrived at by considering the entire agreement. Appellee does not dispute that rule, but points out a different result by its application. She believes paragraphs 2 and 3 apply to a voluntary quit by the field manager, while paragraph 4 applies when termination is involuntary by death, and that the paragraphs are not related or in conflict when the entire agreement is considered.

III. It is appellee's position that the Field Manager's Agreement is not unclear or ambiguous, but under well established rules provides for the relief she sought. She maintains that when the agreement is read as a whole, it provides that renewal overwriting commissions are payable while the agreement is in full force and effect, and under certain circumstances after termination, that paragraphs 2, 3, 4 and 5 (k) deal with these circumstances specifically. We agree. The agreement provides for three modes of termination, (1) by either party giving the other ten days' written notice (paragraph 5(k)); (2) by immediate written notice in the event of the breach of certain provisions of the contract (paragraph 5(k); (3) by automatic termination upon the death of the field manager or his total or permanent disability (paragraph 4). The manager's rights to commissions are quite different for each mode of termination. For a *breach* of contract "the Field Manager shall have no rights or claims against the Company, and shall thereby forfeit any further payment of commissions or service fees which he might otherwise be entitled to hereunder." The field manager's death, of course, does not constitute a breach of contract, nor is it a voluntary quit contemplated in paragraphs 2 and 3.

Paragraph 4 clearly provides that in the event of termination by death "all first year overwriting commissions and renewal overwriting commissions shall be allowed" to the designated beneficiary. We cannot agree with appellant that these are words of limitation. There is no reference to any other provision of the agreement which would limit or regulate the right to those commissions, and we cannot read them into this specific provision of the agreement.

■ Appellee correctly contends, where there are general and special provisions in a contract referring to the same subject, the special provisions control. Small v. Ogden, supra, 259 Iowa 1126, 1131, 147 N.W.2d 18, 21; Schlosser v. Van Dusseldorp, supra, 251 Iowa 521, 526, 101 N.W.2d 715, 718; Beck & Sons v. Economy Coal Co., 149 Iowa 24, 127 N.W. 1109.

In Small v. Ogden, supra, an action for declaratory judgment to construe a real estate contract, we considered the situation where there were conflicting general and special agreements in the contract referring to the same subject, and recognized the " * * * well established rule of construction that where in a contract there are general and special agreements referring to the same subject, the special controls", with citations.

■ This means, where the provisions of special paragraph 4 deal with and provide for commissions on renewal premiums paid subsequent to the termination of the agreement by death, that provision controls. Although we find no real conflict between the provisions of paragraphs 2, 3, 4, and 5(k), we are satisfied paragraph 4 specifically required the granting of plaintiff relief by the trial court.

Perhaps one more rule of construction should be recognized as applicable here. Courts must give to the agreement that interpretation most equitable to the parties and which will avoid unfair results. Freese v. Town of Alburnett, 255 Iowa 1264, 1268, 125 N.W.2d 790, 793; Harvey Construction Co. v. Parmele, 253 Iowa 731, 739, 113 N.W.2d 760, 765.

There are admittedly good reasons for canceling or restricting commissions where the field manager voluntarily terminates the agreement, since the company is interested in keeping them and having them produce for the company. Likewise, if a field manager fails to meet the requirements of the agreement, the commissions should be canceled or restricted. These are amply provided for in paragraphs 2 and 3, but such is not the case if termination is by death. Such termination is not voluntary, and no promise or threat can prevent the loss of a field manager by death.

A reading of the entire contract makes it clear that the requirements of paragraphs 2 and 3 were written primarily for the

benefit of the company, and justly so, to retain and inspire field managers, while paragraph 4 appears to have been written for the benefit of the field mnager to induce and persuade him to enter into that endeavor and sign the agreement. Under this provision he would know his beneficiaries were to be provided for in the event of his death. In other words, paragraph 4 is, in effect, an insurance plan for the field managers. It would be unjust, then, if the company could terminate the benefits of this agreement on the fortuitous circumstance of the field manager's death and retain these benefits for itself, even though these benefits stem from the efforts of the field manager. In Freese v. Town of Alburnett, supra, plaintiff was suing to recover $500 for extra work performed under authority of an extra work order of a drilling contract. In construing the contract the court stated: " * * * an agreement will not be construed so as to give one party an unfair, oppressive, or inequitable advantage over the other, that unless the terms of the contract clearly require it, an interpretation will not be given which places one party at the mercy of the other, that courts will endeavor to give the contract that interpretation most equitable to the parties, and that the contract will be construed most strictly against the one who drew it." See also Harvey Construction Co. v. Parmele, supra, 253 Iowa 731, 742, 113 N.W.2d 760, 766; Marty v. Champlin Refining Co., 240 Iowa 325, 335, 36 N.W.2d 360, 365; Winfield State Bank v. Snell, 208 Iowa 1086, 1093, 226 N.W. 774, 777.

IV. From what has been concluded in the previous divisions it follows that plaintiff was entitled to declaratory relief under Division II of her petition. Also see Rules 261–269, R.C.P.

V. In its Conclusions of Law the trial court held plaintiff was entitled to interest only from the date of the judgment and not from the date when the commissions became due pursuant to payment of renewal premiums. Appellee cross-appealed as to that part of the judgment contending the well established rule in this jurisdiction is that interest begins to run from the date money becomes due. Stromberg v. Crowl, 257 Iowa 348, 353, 132 N.W.2d 462, 465; Weaver Construction Co. v. Farmers National Bank of Webster City, 253 Iowa 1280, 1292, 115 N.W.2d 804, 811; Olson v. Shuler, 203 Iowa 518, 522, 210 N.W. 453, 454; section 535.2, Code 1966. In Stromberg, we stated: "If money is wrongfully obtained or held, interest begins to run on the demand from the time of taking or wrongful withholding." In Weaver, we said: "The general rule is interest runs from the time the money becomes due and payable", citing 30 Am.Jur., Interest, § 40. Section 535.2 provides: "Except as provided in subsection 2 hereof (not applicable here), the rate of interest shall be five cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest not exceeding seven cents on the hundred by the year: * * * (b) Money after the same becomes due. * * *"

It is cross-appellant's position that at the end of each month, subsequent to the death of Sam Mopper, she was entitled to commissions upon the renewal premiums paid to the company on business produced by Mopper and his agents prior to his death. It appears commissions were figured and paid the field manager on a monthly basis. Under that arrangement the commission money became due, and interest thereon should be so computed. To this extent the judgment must be modified.

We conclude appellee was entitled to interest at the rate of five per cent per year on the amounts shown due under Exhibit B at the end of each month subsequent to Sam Mopper's death, and we remand the case for judgment modification in that regard.

Modified and affirmed.

All Justices concur, except STUART and RAWLINGS, JJ., who take no part.