Judith A. CRONBAUGH and Danny D. Cronbaugh, Plaintiffs–Appellants,

v.

FARMLAND MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 90–1313.

Court of Appeals of Iowa.

Aug. 27, 1991.

Roger W. Stone and James M. Peters of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The issue in this appeal is whether the trial court erred in sustaining a motion for summary judgment for an insurance company where the insured waived underinsured coverage and later sued, claiming recovery under the underinsured provisions of the automobile liability policy. We affirm.

Plaintiffs-appellants Judith A. Cronbaugh and Danny D. Cronbaugh, wife and husband, have coverage under an automobile liability insurance policy with defendant-appellee Farmland Mutual Insurance Company. Danny is the named insured under the policy. On March 17, 1989, Judith was injured in an automobile accident. The parties allegedly at fault in the accident carried insufficient liability coverage to compensate Judith for her injuries.

The policy in place at the time of Judith's accident was the same policy Danny has had in place since before May 15, 1981, when he signed a rejection of underinsured motorist coverage. As Danny's wife, Judith was covered under the policy.

After Judith's accident, defendant refused to pay under the underinsured provisions of the contract, and this litigation followed. The defendant filed a motion for summary judgment. The trial court sustained the motion and plaintiffs appeal.

There are few disputes in the facts. Danny carried the policy and told his agent he wanted to lower his premiums. Danny was given a separate sheet of paper prepared by the company for rejection of uninsured and underinsured coverage. Danny signed to indicate he wanted to waive both coverages. Only the waiver of the underinsured coverage is at issue here. The waiver provided in relevant part:

FARMLAND MUTUAL INSURANCE COMPANY

UNINSURED/UNDERINSURED MOTORISTS COVERAGE REJECTION FORM IOWA

In accordance with the provisions of Iowa Statutes, as amended, I have been given the opportunity to purchase Uninsured Motorists Coverage at limits equal to the Financial Responsibility Limits for bodily injury liability.

I have also been given the opportunity to purchase Underinsured Motorists Coverage.

Iowa statutes permit the insured named in the policy to reject the Uninsured Motorists (Family Protection) Coverage, and Underinsured Motorists Coverage or both. I, the undersigned insured, do:

\* \* \* \* \* \*

2. ( ) hereby reject Underinsured Motorist Coverage, being coverage for the protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of a motor vehicle except that the insurance on the vehicle is insufficient to cover the full extent of the liability owed.

3. (x) hereby reject both Uninsured Motorists (Family Protection) Coverage and Underinsured Motorists Coverage.

I understand the rejection indicated above shall apply on this policy and on all future renewals of this policy and on all future policies issued to me by this Company because of changes of vehicle or coverage, or because of an interruption of coverage, until I notify the Company in writing that thereafter Uninsured Motorists Coverage, underinsured Motorists Coverage, or both is desired.

Policy billings from the time Danny signed the rejection to the time of Judith's accident did not make a charge for either uninsured or underinsured coverage, and plaintiffs did not pay a premium for the coverage.

The question is whether there is a fact issue for a jury or a court as the trier of fact to decide. *See KMEG Tele. Ind. v. Iowa State Bd. of Regents*, 440 N.W.2d 382, 384 (Iowa 1989); *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984).

Iowa Code section 516A.1 requires all automobile liability insurance policies issued in Iowa to provide underinsured coverage which the insured is free to reject. Section 516A.1 provides in part, as follows:

However, the named insured may reject all of such coverage, or \* \* \* reject the underinsured motor vehicle coverage, by written rejections signed by the named insured. If the rejection is made on a form or document furnished by an insurance company or insurance agent, it shall be on a separate sheet of paper which contains only the rejection and information directly related to it. Such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to the named insured by the same insurer.

An insured may defeat underinsured motorist by rejecting it in writing. *See Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848, 850–51 (Iowa 1988).

Danny, the named insured, signed a rejection of underinsured motorist coverage on May 15, 1981. The rejection form prepared by the defendant was a separate sheet of paper. It contained only the rejection and information directly related to the rejection. The policy in effect at the time of Judith's injury was a renewal of the policy that was in effect when Danny signed the rejection. The rejection complied with the dictates of section 516A.1.

Danny agrees he knew by signing the rejection the coverage would be removed from his policy. His position is that had he clearly understood the ramifications of signing the rejection he would not have signed it. He contends the agent did not fully explain the rejection and its implications to him before he signed the rejection. The agent contends the rejection was fully explained to Danny. Plaintiffs advance this generates a fact question. We disagree with plaintiffs' contention that Danny's understanding of the ramifications of the rejection is an issue.

Danny signed a written rejection. The rejection complied with the statutory direction for a rejection, and by its terms it clearly described underinsured motorist coverage and what Danny was rejecting. The only evidence is Danny had ample opportunity to read what he signed and ask questions if he had them. The waiver was presented to Danny in response to his request to lower premiums on his policy. Where a party to a written contract is able to and has had the opportunity to read the contract, he or she cannot claim later in an attempt to defeat the contract that he or she did not understand the contract terms or conditions. *See Wilmotte v. Rosenman Bros.*, 258 N.W.2d 317, 323 (Iowa 1977). A request to present extrinsic evidence of a contracting party's intent at the time a contract is signed is a request to have the contract rewritten to reflect that intent, and as evidence to vary the written agreement is not admissible. *See Wellman Sav. Bank v. Adams*, 454 N.W.2d 852, 856 (Iowa 1990); *Kroblin v. R.D.R. Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984); *Schlosser v.*

*Van Dusseldorp*, 251 Iowa 521, 526, 101 N.W.2d 715, 719 (1960).

We agree with the trial court that the evidence is not sufficient to generate a fact question on the issue. We affirm.

AFFIRMED.