**WESTOWN LIQUORS, INC., Appellant,**

v.

**The PARTY MARKET, INC., Thomas E. Best and Julie M. Best, Appellees.**

No. 90–1852.

Court of Appeals of Iowa.

Feb. 25, 1992.

Mark McCormick and Margaret C. Callahan of Belin, Harris, Lamson, McCormick, P.C., Des Moines, for appellant.

Patrick W. Brick, Thomas J. Levis, and Mark R. Schuling of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

OXBERGER, Chief Judge.

This case arose from an agreement dated March 12, 1987, by which the plaintiff, Westown Liquors, Inc., was to sublease to a retail store called The Party Market, Inc. certain retail space and to lend the store $200,000. Defendant Thomas E. Best, president of The Party Market, and his wife, defendant Julie M. Best, signed a $200,000 mortgage note as individual guarantors and gave the plaintiff a second mortgage on their home.

The Party Market subsequently failed to make the required payments under the agreements. On December 14, 1987, the plaintiff filed a petition against The Party Market and the Bests seeking enforcement of the landlord's lien with specific attachment pursuant to the security agreement, appointment of a receiver, damages against The Party Market and entry of a judgment against the Bests as guarantors. Count II sought foreclosure of the real estate mortgage against the Bests.

The district court entered an order granting specific attachment of The Party Market's assets and appointed Thomas Best as temporary receiver for The Party Market. Bests sought a credit for the prospective liquidation of The Party Market.

Plaintiff filed a motion seeking a partial summary judgment of liability on the first count of the petition and an appointment of Frank Leonhardt, an employee of Thomas Best, as permanent receiver of The Party Market. The parties approved that appointment. Because of the potential liquidation credit, there remained an issue regarding the amount Bests owed the plaintiff.

Leonhardt was ordered by the court to complete an inventory of The Party Market's assets, account for receipts, and to submit a final report itemizing the collateral and its value showing other charges against the receivership. In addition he was required to recommend the amount of credit the Bests might be entitled to receive on their debt.

On March 8, 1988, West Des Moines State Bank claimed a priority security interest in The Party Market's inventory, accounts, and property. As a result, the court modified the receivership order. The receiver was to file a report within seven days, regarding whether the business should continue or be liquidated. He did not file a report. In addition, all parties were enjoined from interfering with the receiver, the business, or assets in any

manner except inspection of the premises and inventory as allowed by the receiver.

On August 9, 1988, Leonhardt resigned as receiver. He did not seek court permission. According to Leonhardt, the president of Westown Liquors told him what he could and could not do. Leonhardt revealed he did not have access to the books and records of the The Party Market and was prevented from performing his duties.

Following Leonhardt's resignation, the plaintiff hired a manager, altered the physical layout of the business, sold inventory at retail, replaced inventory and advertised that the Party Market was under new ownership.

The trial court appointed an independent appraiser to place a value on The Party Market. According to the only records the appraiser had, the cost value of the assets and inventories as of February 14, 1988, exceeded $250,000.

From February 15, 1988, until March 26, 1990, the plaintiff ran the business as a retail operation and did not keep records regarding The Party Market's assets. The record indicates that The Party Market sold over $1.2 million in inventory in 1988 and claims over $800,000 in assets and inventory in 1989.

Five days before trial, the district court entered an order giving Westown Liquors priority over West Des Moines State Bank in The Party Market's inventory and assets in an amount of $12,155. The plaintiff then dismissed the first count of its petition and filed a motion for summary judgment claiming no issue of material fact existed to prevent foreclosure of the mortgage.

The Bests filed a motion to dismiss both counts of the plaintiff's petition claiming that the plaintiff's dismissal of the first count precluded the continuing of the foreclosure action.

An appraiser presented a report indicating that as of February 1988, The Party Market had no going concern value and that the liquidation value of the available assets would have been $89,727 as of February 14, 1988, and $70,209 as of July 14, 1989. The plaintiff alleged it had lost money by The Party Market's continued operations under the receivership.

On June 20, 1990, the district court entered an order requiring liquidation of The Party Market. The district court ordered the collateral to be sold to Westown Liquors for $28,100. The court directed the receivership accounts to the West Des Moines State Bank.

*Scope of Review:* Mortgage foreclosure proceedings are equitable. *Decorah State Bank v. Zidlicky*, 426 N.W.2d 388, 390 (Iowa 1988). We therefore review de novo. Iowa R.App.P. 4.

*Obligation under the Guarantee:* We consider whether the trial correctly determined that the Bests were not liable under the guaranty. The trial court found the plaintiff was not entitled to a foreclosure of the mortgage given by the Bests. We agree.

The trial court found the guaranty was satisfied because Westown Liquors had taken over the business with assets and inventory in excess of the $250,000 maximum guaranty. The court reasoned there should be no foreclosure because the plaintiff collected revenues in excess of the maximum.

Central to this dispute is the guaranty which was drafted by the Plaintiff. The guaranty reads:

> Any amounts collected by lender pursuant to the terms of the lease agreement entered into between the parties simultaneously herewith, arising out of the liquidation or forced sale of any assets and/or inventory of the borrower shall be credited against the $250,000.00 guarantee described herein.

Bests assert they entered into a conditional guaranty agreement. We agree. Courts will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, and only where the language of the contract is of doubtful meaning will there be resort to rules of construction. *Mopper v. Circle Key Life Insurance Company*, 172 N.W.2d 118, 124 (Iowa 1969).

We find the language clear that Thomas and Julie Best guaranteed any defaults in

the payments by The Party Market up to a maximum amount of $250,000.00. The agreement provided that they were to receive credit toward this guarantee for "any amounts collected by the lender". The amounts included those which arose out of the "liquidation or forced sale of any assets and/or inventory of the borrower". Westown Liquors focuses upon the terms "arising out of the liquidation or forced sale". Westown argues that the amounts for which the Bests are entitled a credit are those ultimately liquidated for $28,100 by court order on July 25, 1990. We disagree.

Pursuant to the February 14, 1988 order, the Bests were removed from the operation of The Party Market, Inc. At that time the court appointed receiver took control of the business. There is substantial evidence in the record that the Plaintiff operated The Party Market as a retail business from the time the receiver resigned until trial. The Plaintiff never advised the trial court that it was doing so or that the business was losing money.

The Plaintiff provided no evidence regarding the amounts collected from the sale of assets over a period of more than two years. The trial court intended from February 14, 1988 that The Party Market was to be liquidated or notified otherwise.

The court was not notified that The Party Market operations were continuing. We find the "amounts collected" following February 14, 1988, arose out of a period in which the court intended liquidation or forced sale. Further, this court affirms the trial courts application of clean hands to bar plaintiff's claim. We note the inexcusable absence of records regarding the sale of inventory and assets during the period in which the Plaintiff conducted the business.

The Plaintiff and the receiver chose to operate The Party Market as opposed to immediate liquidation. Plaintiff cannot now assert after selling assets and inventory at retail prices for over two years that it has been prejudiced by that decision. We affirm the trial court.

Each party will pay his or her own attorney's fees. Costs are taxed to the appellant.

AFFIRMED.